Reverend Gene **BRIDGES** et al.,
Plaintiffs,

v.

**Admiral D. C. DAVIS** et al., **Defendants.**

Reverend Gene **BRIDGES** et al.,
Plaintiffs,

v.

**Colonel D. McGOUGH** et al., **Defendants.**

Civ. Nos. 3078, 3079.

United States District Court,
D. Hawaii.

Nov. 26, 1969.

John S. Edmunds, Honolulu, Hawaii, The American Civil Liberties Union of Hawaii and the American Civil Liberties Union, for plaintiffs; Brook Hart, Honolulu, Hawaii, of counsel.

Robert K. Fukuda, U. S. Atty., District of Hawaii, for defendants.

## DECISION AND ORDER OF DISMISSAL

TAVARES, District Judge.

If this Court were not in the middle of trying a long jury case, it would love to have about three weeks to get all the decisions together and write a very learned, or try to write a learned, decision on this subject. However, the subject does call for an early decision and the Court has spent every effort toward that and, therefore, the Court will have to make a decision orally in order to expedite the matter.

In the situation presented by the three cases originally before the Court, namely, Civil Nos. 3078, 3079 and 3080, three ordained ministers, Bridges, Jones and Warner, all of Honolulu, allege that military authorities have barred them from military installations in the Honolulu area, thereby depriving them of rights allegedly guaranteed under the Civil Rights Act of 1871, 42 U.S.Code § 1983, together with those under the First and Fifth Amendments to the Constitution of the United States. The claim under Section 1983, however, has been withdrawn by plaintiffs.

Other plaintiffs, being military prisoners who joined with the three ministers in two of the three actions, are mentioned later.

For simplicity the cases will henceforth be designated as follows: No. 3078, Navy; No. 3079, Marine, No. 3080, Army.

The complaint in the Navy case was accompanied by a Motion for a Tempo-

rary Restraining Order and for Preliminary Injunction. In the Navy case, the three minister plaintiffs were joined by others, being enlisted men of the Navy, under confinement at the Naval Correctional Facility, U. S. Naval Station, Pearl Harbor, which is here on Oahu in the State of Hawaii, "having been confined," according to the language of the complaint, "for allegedly being absent without official leave from military duty and being present during said leave at the Church of the Crossroads in Honolulu." (Complaint, First Cause of Action, Count I, paragraph 3.)

It is clear that plaintiffs intended to assert that they had been at the Crossroads sanctuary for anti-Vietnam war adherents during their respective periods of *absence* rather than, as was stated in the complaint, during said "leave," because, as I take it, there was no official leave.

The Complaint in the Marine case was likewise accompanied by a request for a Temporary Restraining Order and Preliminary Injunction. In the Marine case, the three minister plaintiffs were joined by one enlisted man of the Marine Corps "currently confined to the Correctional Facility at the Kaneohe Marine Corps Air Station. * * * Prior to being so confined, Plaintiff had been absent from his military duties and had been at the Church of the Crossroads in Honolulu, Hawaii from approximately September 6, 1969 until September 11, 1969." (Complaint, First Cause of Action, Count I, paragraph 3.)

The Complaint in the Army case did not seek a Temporary Restraining Order although a Preliminary Injunction was sought. It would appear that at the time of filing this particular complaint none of the followers of the three plaintiffs were incarcerated and none joined as parties plaintiff. The Complaint does set forth, however, in paragraph 6, "That prior to approximately October 5, 1969, * * * Plaintiff Warner did in fact visit certain inmates at said Stockade,

including confinees Albert King, Bryan Bohannon, Allan Porter and Mitchell Johnson, each of whom was confined for having earlier absented himself from the military service and seeking sanctuary at the Church of the Crossroads in Honlulu, Hawaii." This was taken from the First Cause of Action, Count I, paragraph 6.

A second count of the first cause of action in each of the three complaints alleges that the defendants wilfully conspired among themselves to perform the acts complained of thereby proximately depriving plaintiffs of their rights. By a Second-Cause-of-Action allegation in each complaint, it is alleged that the defendants named therein wilfully conspired with named defendants of another or other service branch or branches to deprive plaintiffs of their rights.

The thrust of the Complaint in the Navy case regarding the confinee plaintiffs is to the effect that they are being deprived of their freedom to consult with ministers of their own choice while in confinement at the Pearl Harbor Correctional Facility.

The three complaints were filed on November 6, 1969, and that afternoon a brief meeting was held in open court. Thereafter and from approximately 3:30 p. m. until 8:00 p. m. on November 7, 1969, and from 10:00 a. m. to 6:30 p. m. on Saturday, November 8, 1969, plaintiffs and the defendants presented evidence.

At the outset, the named plaintiff, Robert Long, named in the Marine case, stated in open court that he had not requested nor did he desire the services of John S. Edmunds or Brook Hart as attorneys to represent him in this or any action against military authorities and further that he did not wish to be a party plaintiff in the Marine case. After permitting conference by Mr. Long with the attorneys concerned, the Court ordered, without objection—in fact it was with the concurrence of the attorneys—

that the name of Robert Long be withdrawn from the pleadings as a named plaintiff.

The Court by this implies no finding or intent to find any unethical conduct on the part of plaintiffs' counsel. I think they have an explanation which covered the situation, as far as this Court is concerned.

There being no prisoners in confinement by the Marine Corps or the Army, plaintiffs' demand for a Temporary Restraining Order against the Marines was abandoned or at least not pressed—I'm not quite sure I remember which. No such action having been sought against the Army, only the demand against the Navy remained.

By stipulation between the parties, it was agreed that plaintiff Bridges might visit Pearl Harbor on Sunday, November 9, 1969, and the plaintiffs thereupon temporarily abstained from pressing their demand for an immediate Temporary Restraining Order against the Navy pending further hearing in the matter. The Court by this statement again does not imply that the prayer for a Temporary Restraining Order was waived by plaintiffs.

In this posture the matter was continued over to Monday, November 17, 1969, the date previously set for hearing on the Orders to Show Cause. The Court ordered consolidation of the cases and the hearings for Preliminary Injunction and Permanent Injunction. The Court further advised the parties that all evidence which had previously been taken and the exhibits which had been received in evidence would be considered to be a part of the record of the hearing to show cause without the necessity of repetition.

The matter came on for further hearing at 10:00 a. m. on November 17, 1969, and with brief recesses for lunch and dinner continued on until 8:30 p. m. On November 17, 1969, and prior to commencement of the hearing to show cause, the Government filed Motions for Dismissal in the cases against the Marines and against the Army. The Court took these motions under advisement but deferred rulings thereon, pending such further showing as might be made on the show cause hearing.

The Court adjourned until 3:00 p. m., November 18, 1969, because of the commencing of a lengthy jury trial involving out-of-state parties in another matter earlier on the 18th. The Court reconvened at 3:00 p. m. and heard testimony presented by plaintiffs and defendants until 7:45 p. m. on November 18th. The Court reconvened at 1:00 p. m. on November 19, 1969, to receive additional authorities the parties might desire to submit and to settle unresolved procedural problems.

The Court, by stipulation of counsel, set Saturday morning, November 22, 1969, at 9:00 a. m. for such final arguments as the parties might desire to make and as a deadline for the submission of pertinent regulations heretofore requested by the defendants. I presume that those regulations are the ones that they quote in their final memorandum filed on November 21, 1969.

The plaintiffs at each of these hearings subsequent to November 9, according to my recollection, renewed their demand for a Temporary Restraining Order to remain in force until the Court's further decision on the issuance of a preliminary injunction or a permanent injunction. The Court in each instance denied or failed to grant plaintiffs' demand because the Court felt that no sufficient showing had been made to justify the issuance of such order.

The Court spent every spare minute available wading through the tremendously exhaustive citations of authority submitted in support of the contentions espoused by the various parties.

During the period of the Court's search for legal precedents and rationale, the Court did continue with all dispatch possible to permit the plaintiffs and the

defendants to present such evidentiary matter as they respectively desired.

On November 18, 1968, by agreement between counsel for all parties, Civil No. 3080, the Army case, was dismissed on the basis of certain understandings stated by such counsel in open court, according to my recollection.

■ At this juncture, in going through all of this reading, the Court has come to the conclusion that, in this particular case, it must apply the doctrine of non-reviewability in the two remaining cases presented, meaning that, under the circumstances now appearing, this Court has no power to review the military administrative determinations in question—here, the Navy and Marine Corps determinations—which exclude the three civilian ministers from military installations in the vicinity of Honolulu, Hawaii, even though such action may deprive the confinee plaintiffs of the services of the minister-plaintiffs as ministers of their choice.

In this connection, I might point out that, in an address delivered by Chief Justice Warren at the New York University Law Center on February 1, 1962, entitled "The Bill of Rights and the Military," which was one of the very long notes cited by counsel for plaintiffs, 37 New York University Law Review 181 at page 187, written in 1962, the then Chief Justice said, among other things:

" * * * It is indisputable that the tradition of our country, from the time of the Revolution until now, has supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that the courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have."

I think I might say that this, in my view, applies in this particular case to the military reservation also. The Court, by the way, has also read other notes such as the "Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement" in 55 Virginia Law Review 483, and a very long article in 56 California Law Review 379 entitled "God, the Army, and Judicial Review: the In-Service Conscientious Objector."

Although the Chief Justice was not in sympathy with the majority, he did point out in that New York University Law Review note, that in Cafeteria and Restaurant Workers Union, etc. vs. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230, 1961, where a short-order cook employed by a concessionaire on a military base was summarily refused further security clearance without hearing, explanation, or opportunity to rebut, the Court reached the constitutional question of the power of Naval authorities to exclude persons from Naval bases, and, by a five to four vote, decided the question against the employee.

Chief Justice Warren then continues,

"I joined Mr. Justice Brennan's dissent, which took the position that the Court, while conceding petitioner's right not to be injured arbitrarily by the Government, in fact made that right nonenforceable by refusing to accord petitioner any procedural protection."

The Court believes that Chief Justice Warren, even though dissenting, expressed accurately the law as the Court determined it to be in 1962, and this Court has failed to find any compelling decision or reason to hold that the law today as applied to the present situation is any different in principle from what it was determined to be by the Supreme Court of the United States in 1962. Granting that the Cafeteria Workers case was decided by a five to four decision, it nevertheless still appears to stand as the law of the land and this Court feels it should be followed until and unless overruled by higher authority.

If the Court went into the facts of this case and so forth and didn't reach this conclusion, it could write for weeks con-

cerning various ramifications of the problem presented, but to do so would be to do the very thing which this Court is holding it lacks power to do.

In passing, the Court might make the observation that it has been confronted with a situation which is not at all unique. The Court out of the blue was asked to issue a Temporary Restraining Order for the protection of three ministers and a group of military confinees. It was alleged that they were being deprived of Constitutionally guaranteed rights. All judges recognize this situation as being one which demands immediate consideration. The Court has made every reasonable effort to keep abreast of the trends enunciated by the courts, particularly in the area of individual Constitutional rights.

The Court has previously had problems dealing with conscientious objectors, in and out of the military, before it. When confronted with the particular requests presented by the three complainants herein, however, this Court did not have a firm or fixed resolution within fingertip grasp and evidentiary hearings were immediately undertaken so that, without delay, every aspect of the problem could be explored.

At the same time, with all the facilities available to it, the Court undertook to sort through the myriad of decisional material and the other pertinent periodical writings. The Court did not reach the conclusion, expressed just now until after this undertaking had been accomplished. Coincidental with this result came the end of the evidentiary hearings.

Now, having heard all of the evidence presented, it is exceedingly difficult for this Court to refrain from discussing the facts as the Court believes them to be, in the light and context of analogous decisions rendered by other courts. The Court, however, foregoes this temptation without apology to brother jurists who have succumbed to the temptation. The Court will not go into all the various ramifications; however, the Court will make this gratuitous comment that were this Court to hold otherwise than it did on the first basic issue, and were the Court to hold that it had the power to determine all of the questions raised, the Court believes that upon all of the facts before the Court, that the end result would not be different, notwithstanding the weaknesses in the testimony shown by the plaintiffs.

In this connection, I might say that there are some subsidiary issues to be ruled on, which of course the Court doesn't have to decide, but will decide, in case this action goes up on appeal, as I'm sure it will and I hope it does, because I'd like to see whether or not *Cafeteria Workers* versus *McElroy* means what it says. If is doesn't the Supreme Court ought to tell us so.

First of all, I believe that the plaintiffs, notwithstanding the Government's position, had the necessary nexuses, as I believe at least one decision I have read says, to enable them to have standing to sue if this Court has jurisdiction to hear this case. They are affected by the order and to that extent I believe that, although they are claiming incidentally or as part of their rights, the rights of people who wish to consult with them, I believe that the Courts would generally hold that there were sufficient nexuses established to give them standing to sue.

Inasmuch as this question is going to recur from time to time and there is still a continued situation in one of the cases where the claimed rights of at least one confinee are still not mooted, the Court believes that the withdrawing of the other plaintiffs would not deprive the Court of jurisdiction or moot the case, if it had jurisdiction.

The Court believes that the record will show other rulings made by the Court on evidence and other matter that don't need to be mentioned here, but I will close by saying that the Court's decision on the first and the major and controlling point is influenced, among other things, by the

importance of the Naval Base here and the military bases here particularly the Naval and Marine reservations, including the fact that we have a nuclear submarine base, we have various other essential parts of the effort to carry out what are still the policies of the nation regardless of what the opponents of the Vietnam war may say. It is still the national policy to prosecute the Vietnam action. The Admiral still has the duty to enforce that national policy; and the bases in the middle of the Pacific are in an extremely vulnerable position and are indispensable to the prosecution of that policy, and the Court feels that, under all of the circumstances disclosed by the whole record, the situation calls for the application of the doctrine this Court has above enunciated—that, in this particular type of case as shown by these particular circumstances with respect to these particular Naval reservations, the Court should refrain from interfering with the determinations of the military and not try to tell the military what to do in these highly important administrative decisions.

Now, the reporter will please have this typed out and the Court will edit it as soon as possible and this will constitute the findings of fact and conclusions of law, unless further ones are asked.

I wish to expedite this matter because I am sure whichever parties are involved, if they are going to appeal, will want to appeal as soon as possible.

Notwithstanding the fine legal points so ably argued by extremely able counsel for the plaintiffs, the Court cannot find here, and does not find the existence of any conspiracy. Therefore, if the Court has the power to decide the matter of the existence or non-existence of a conspiracy, raised in two places in the complaints, the Court rules that conspiracy has not been established.

For the reasons above mentioned the remaining complaints in Civil Nos. 3078 and 3079 are hereby dismissed.