238

Gary H. MOLS, Petitioner,

v.

The Honorable Stanley RESOR, Secretary of the Army, Colonel John Doe, Commanding Officer, United States Army Advisor Group (USAR), and Captain C. K. Kawakami, Adjutant General, United States Army Advisor Group (USAR), Respondents.

Civ. No. 70-3241.

United States District Court,
D. Hawaii.

Oct. 2, 1970.

David C. Schutter, Honolulu, Hawaii, for petitioner.

Robert K. Fukuda, U. S. Atty., D. Hawaii, Honolulu, Hawaii, for respondents.

DECISION DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TAVARES, District Judge.

The above matter came on regularly for hearing on October 1, 1970, this Court having ordered the respondents to show cause why a preliminary injunction should not issue. From exhibits included with the petition and facts referred to therein and in petitioner's memorandum, and either admitted or uncontradicted by respondents, and from respondents' written return or response to the Order to Show Cause presented by the United States Attorney, with exhibits and facts referred to therein, and in respondents' memorandum and either admitted or uncontradicted by petitioner, the Court believes that it has before it the entire record and evidence available to the various officers and boards involved in this proceeding. There is no substantial conflict as to these records and facts, except the different interpretations placed on some of them by the opposing parties.

The Court having duly considered all of such files and records herein and facts and evidence, it is the Court's finding and conclusion and order that the petition of Gary H. Mols should be and it is, therefore hereby dismissed.

The action arises from the Army's denial of petitioner's application for a discharge from the United States Army Reserve as a conscientious objector and its subsequent action in ordering petitioner to active duty for a period of nineteen months and fourteen days. By orders dated August 21, 1970, Gary H. Mols was ordered to active duty by assignment to the United States Army Reception Station, Fort Ord, California, with a reporting date of September 21, 1970. The petition herein was filed in this court at 5:00 o'clock and 50 minutes, P.M., on September 21, 1970 Hawaiian time. Local time at Fort Ord would have thereby been 2050 hours or 3 hours and 10 minutes before Mol's deadline for reporting prior to 2400 hours at Fort Ord. But for the Temporary Restraining Order issued herein, there would have been no way whereby the petitioner could have complied with the orders issued to him approximately one month in advance of his reporting date. Actually, according to Exhibit C of the petition, Mols was advised under date of April 6, 1970, that active duty orders were being requested because the reservist had failed to participate satisfactorily. Petitioner's Exhibit D recites that Mols' failure included unexcused absences from drills on November 3, 9 and 17, 1969 and December 11, 1969, each before Mols had applied for discharge (January 10, 1970) with one additional absence on March 23, 1970, after the application and before the letter of April 6, 1970, Exhibit C, which advised that "unless notified otherwise you are not required or authorized to attend unit assemblies while awaiting entry on active duty." Petitioner failed to note that his Exhibit D shows on its face that the 9 November 1969 date was a multiple drill date accounting for two drills. The petitioner had missed his fifth drill assembly on December 1, 1969, as found by the Army Conscientious Object Review Board, paragraph 6 b(2) Exhibit III attached to Response.

The chronology of events recited by petitioner's Memorandum show that Gary H. Mols, is a Private E–2 in the United States Army Reserve attached to the 322nd Civil Affairs Group, Fort DeRussy, Oahu, Hawaii; on January 10, 1970, Mols filed an application for discharge from the Army claiming conscientious objector status.

This application was denied by the Conscientious Objector Review Board on May 3, 1970, Exhibit A attached to Mols' Appeal to the Army Board for the Correction of Military Records. This latter appeal was not initiated until July 7, 1970. The reason for this two-month delay does not appear, although, viewing the record as a whole, it is possible to draw an inference that the petitioner has calculated quite carefully to extend the time available to its utmost.

By separate and wholly independent administrative action, petitioner sought to contest the validity of the Army decision to order petitioner to active duty. By letter of April 24, 1970, the Army advised petitioner as follows:

(Exhibit E to Petition):

"You have the right to appeal this order to active duty and any such appeal must be submitted to this headquarters no later than 15 days from the receipt of this letter."

By Exhibit F it would appear that an extension of time was requested and that Army granted extensions for appeal whereby the appeal was to reach headquarters not later than May 26, 1970. In sum, the petitioner has been quite successful in avoiding any significant participation in military activity for a substantial number of months.

The record clearly establishes that on December 19, 1967, the petitioner enlisted in the United States Army Reserve program for a period of six years. There is no indication in the record that petitioner claimed conscientious objector status at any time prior to his induction. Rather the contrary is shown.

Petitioner was assigned to a Reserve Training Unit the 322nd Civil Affairs Group, Fort DeRussy, Hawaii, whereby he could conveniently attend regular drill

periods as prescribed by the program. All members of such units receive regular pay and allowances for each drill period in which they participate. The record tends to indicate that the period of active duty, prescribed to commence on September 21, 1970 (Exhibit A), of 19 months and 14 days represented the remaining portion of petitioner's contract of enlistment.

Without further comment regarding the timeliness of petitioner's actions, it would appear that he has now taken all of the steps necessary to exhaust the administrative remedies available to him. As a practical matter, the only remaining step is a decision by the Army Board for the Correction of Military records, making a final disposition of petitioner's appeal to that Board. Craycroft v. Ferrall, 408 F.2d 587 (9 Cir. 1969).

This court in the case of Kallmann v. Milburn, 307 F.Supp. 412 (D.Haw. 1969), cited by the petitioner, held:

"The Court of Appeals of the Ninth Circuit has set forth certain criteria to be utilized in determining the appropriateness of a stay order pending administrative determination." [Citing Schwartz v. Covington, 341 F.2d 537, 9 Cir. 1965; Craycroft v. Ferrall, 408 F.2d 587, 9 Cir. 1969]. "These criteria are: (1) The likelihood that the subject person will prevail on the merits of an appeal from the administrative process to the court; (2) Irreparable damage to the subject person if a stay is not ordered; (3) No irreparable damage to the other party or the public from a stay order."

The court further pointed out in the Kallmann case that although uncertainty existed as to the proper test to be applied under Craycroft, supra, the basis-in-fact test seemed applicable and concluded that if any basis-in-fact could be found to support the decision of the Army Conscientious Objector Review Board, there would be little likelihood that the petitioner would prevail on the merits of an appeal.

The Craycroft judgment was vacated and remanded by the Supreme Court, Craycroft v. Ferrall, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351, decided March 30, 1970, because the Solicitor General conceded that the administrative remedies had either been exhausted or were non-existent.

In the instant case, the administrative remedy is currently being pursued. Salcedo v. Lauer, 430 F.2d 1282 (9 Cir. 1970) decided August 6, 1970.

In this setting and looking primarily to No. (1) of the criteria cited in Kallmann, above, the Court finds nothing in the record upon which to base a clear finding that petitioner is a conscientious objector measured by any standard. The Court may possibly be inept at understanding representations made in Exhibit B, attached to the petition herein, but the Court finds very little beyond the request for discharge as a Conscientious Objector in the first and last sentences of the Exhibit and paragraph I (m) of the "General Information" attachment, which recites:

"I will not perform under Selective Service C O Work Program, nor do I consent to having orders published for such assignment.",

which point in any way to the "Objections" Conscientious or otherwise, which the petitioner seeks to expound. This Court can hardly place a greater burden upon others by requiring that they possess greater or broader understanding. The Court failing to perceive any basis upon which the subject person can reasonably be expected to prevail on the merits of his appeal can only conclude that a stay order pending the outcome of his appeal is wholly inappropriate. The Court need not consider the other criteria, and will only comment that petitioner could very well have avoided the issuance of active duty orders by continuing to attend "non combatant" drills during the pendency of his application for discharge. The Court is not impressed by the arguments of the petitioner pointing to irreparable damage

which he will suffer if a stay is not ordered. Nowhere does the petitioner even indicate that his beliefs have undergone any change whatever since the date of his enlistment. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, decided June 15, 1970, and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) are not in point.

Within the past year this Court has been called upon to intercede, through the issuance of Restraining Orders and Injunctions, with the administrative functions of Executive Agencies of Government. One of these cases was Bridges v. Davis, 311 F.Supp. 935 (D.Haw.1969). In that case the Court held that it was without authority to review administrative orders of commanding officers of Navy and Marine Corp bases which excluded three civilian ministers from their respective bases. In reaching its conclusion, the Court relied to a large extent upon Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, 1961. This Court particularly noted an address delivered by Chief Justice Warren, who dissented in the *Cafeteria* case, at the New York University Law Center on February 1, 1962, entitled "The Bill of Rights and the Military," 37 New York University Law Review 181. The Chief Justice said, among other things, at page 187:

> " * * * It is indisputable that the tradition of our country, from the time of the Revolution until now, has supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that the courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have."

See also "Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement," 55 Virginia Law Review 483 and "God, the Army, and Judicial Review: the In-Service Conscientious Objector," 56 California Law Review 379. The Court has also read the law review article made available by petitioner's counsel, in 17 U.C. L.A. L.Rev.No. 5, May 17, 1970, at page 975, but this is the 9th Circuit and until the controlling decisions of that court are overruled by the same or higher authority, this Court will not follow the suggestions of that article contrary to such decisions.

This Court is aware that there have been arguments made here that only three men saw this petitioner in connection with his application for Conscientious Objector status. However, aside from the fact that petitioner waived the right to an additional interview with an officer experienced in Conscientious Objector matters above the rank of 03, that argument ignores the inferences which can reasonably be drawn from other matters of record, including, for instance, date of his enlistment, things that he himself said in his letters—which could be construed to indicate he really hadn't changed his convictions since his enlistment—things said in letters submitted by him from friends in support of his C.O. application, which are not as unequivocally in favor of petitioner as the interpretations urged by his counsel are, but which contain statements that could be construed as damaging to his claim of sincerity, etc. Taking these into consideration and, even if there was error in one of the remarks made by the Board about a garden city, which was probably facetious (which reminds the Court of the time World War II broke out and Washington wired Honolulu in substance, "What are you going to do with all the pineapple trees on the land you're condemning"), nevertheless, there were other things, other inferences, which could be drawn, and there are other reasons given by the Board, which do have, as this Court believes, a basis in facts from which they could draw inferences adverse to the sincerity of the petitioner.

That being the case, this Court is not justified in substituting its own judgment, if it were different, for those of the regularly constituted adminis-

strative officers and boards. Thus this Court can not find that there is no basis-in-fact for the Conscientious Objector Review Board's final determination. In this connection, this Court does not have to determine whether in its own judgment this defendant (petitioner) was sincere or believed himself to be sincere. This Court is limited to determining whether there was a basis-in-fact for the Review Board to reach its conclusion, and the Court feels that there was.

To put it another way, this Court does not believe that there is a reasonable likelihood that the subject person will prevail on the merits on an appeal from the administrative determination to the courts.

In the event that the Board for the Correction of Military Appeals denies relief to the appellant, he will be in an active duty status. Should the Board grant relief to the petitioner, he will be duly processed for discharge. This Court does not find any irreparable damage being suffered by petitioner during the interim period between the date hereof and such time as the Board may act, in light of the showing which has been made.