**P. F. C. Daniel E. PITCHER, Petitioner-Appellant,**

v.

**Melvin LAIRD, as Secretary of Defense, et als., Respondents-Appellees.**

No. 28285.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1970.

Maury Maverick, Jr., San Antonio, Tex., for petitioner-appellant.

Seagal V. Wheatley, U. S. Atty., Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for respondents-appellees.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

RIVES, Circuit Judge:

Pitcher appeals from a denial of his petition for writ of habeas corpus in the district court. Pursuant to a United States Army Regulation,[1] Pitcher filed an application for discharge, claiming that he had become a conscientious objector after entering the military service. The Secretary of the Army denied the request for discharge on the ground that Pitcher's claim was based on a personal moral code and not upon religious beliefs. The district court in denying his petition for habeas corpus found that there was basis in fact for the Army's denial of his application for discharge. We reserve and remand with directions that Pitcher's request for habeas corpus relief be granted.

Private First Class Pitcher voluntarily enlisted in the U. S. Army under a contract of service dated February 19, 1968. Although he had considered an I–A–O classification (noncombatant military service) on philosophical grounds, Pitcher thinking he could keep a clear conscience entered the medical corps.[2] At

---

1. See note 2, *infra.*

2. In his application for discharge, Pitcher explained his beliefs at the time he enlisted in the Army:

"As I became of service age and faced the question of how to serve in the military and keep harmony with my God, I decided to serve in the medical corps so that my primary obligation to the military would be to help my fellow-men. I enlisted in the Army with the stipulation that I would be put into the medical corps (see Guaranteed Enlistment Form 'Statement of Understanding (Regular Army),' dated 19 Feb. 68). I felt by serving in this branch of the service that I would be saving lives, not taking them. I felt in this

no time prior to enlistment did he raise the question of conscientious objection.

On April 2, 1969, Pitcher submitted a written request for discharge from the Army under the provisions of Army Regulation 635–20.[3] Pitcher stated in his application that after joining the Army he had a "new, moving experience"

way I would best serve my country, and not taking life.

"I was considering applying for 1–A–O status during my entrance into the military service, mainly during basic training. At that time I amassed some evidence supporting my position (see letter, William A. Bennett, First Methodist Church, Rock Island, Ill., dtd 3 Apr 69). I compromised myself by rationalizing that by being in the medical corps I could keep a clear conscience. For the last six months, during my tour at Fort Sam Houston, I have been attending and working in the Church of the Holy Spirit, an Episcopal Church Mission in downtown San Antonio. Although the church is associated with the Episcopal Church it is a basically Ecumenical Church."

3. The pertinent provisions of Regulation 635–20 are as follows:

"1. *Purpose.* This regulation sets forth the policy, criteria, and procedures for disposition of military personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form.

"2. *Scope.* This regulation applies equally to commissioned officers, warrant officers, and enlisted personnel in the active military service.

"3. *Policy.* a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service prior to induction.

(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

(4) Based on objection to a particular war.

c. All requests for discharge based on conscientious objections will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

d. Final determination on all requests for discharge based on conscientious objection (to include those listed in b above) will be made at Headquarters, Department of the Army.

"4. *Procedure.* A. Military personnel will submit applications for discharge by reason of conscientious objection on DA Form 2496 (Disposition Form) to their immediate commanding officers. The individual requesting discharge will include in his application, or as an inclosure thereto, the information indicated below as the minimum required for consideration of his request. The individual may submit such other information as desired.

\* \* \* \* \*

c. An individual requesting discharge will receive a counseling interview by a chaplain and a psychiatric interview by a psychiatrist (or medical officer if a psychiatrist is not available). The chaplain will submit a report of the interview to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief. The psychiatric disorder which would warrant treatment or disposition through medical channels.

d. The applicant will be afforded an opportunity to appear in person (with counsel retained by him, if he desires) before an officer in the grade of 0–3, or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters.

(1) After permitting the applicant to be heard in support of his application and making such other inquiry into the merits of the application as he considers appropriate, the officer will enter his recommendation and the reasons therefor into the file.

(2) If the applicant waives the opportunity to be heard, his waiver will be

which was based on religion and a belief in God. As a result of this "experience," his thoughts crystallized into conscientious objection to military service in any form. In describing the source of his newly-founded beliefs, Pitcher explained that for the previous six months he had been attending and working in the Church of the Holy Spirit, an Episcopal Church Mission in downtown San Antonio, Texas. During this period and after a great deal of prayer and meditation, "I realized that I could not in any manner support the use of violence against my brother whom I am commanded, as a Christian, to love." In describing the depth of his conviction, Pitcher stated: "It was not until recently that I made a decision to become a conscientious objector and because the finalizing of this decision came only recently, I have not had time to demonstrate my beliefs in an open manner. Until this time, I have been a compliant with serious doubts about my military commitment." [4]

As provided by Regulation 635–20, Pitcher was interviewed by a medical officer, an Army chaplain, and an officer of the grade of O–3 or higher. The medical officer, Major Martin S. Posner, found that Pitcher had no psychiatric disorder or mental defects. The Army chaplain, Major Howard W. Marsh, thought Pitcher to be sincere in his conscientious objection beliefs and found that his objection to military service on religious grounds was only recently formed.

Pitcher was also interviewed by a field grade officer, Lt. Colonel Denis F. Sheils, who found:

"From this interview and evaluation of the material in PFC Pitcher's request it is difficult to determine the sincerity of his actions but it does appear that his conscientious objections are philosophical views or personal moral codes that he has developed since his association from September 1968 with the Church of the Holy Spirit which supports a coffee house as part of the church mission. It does not seem logical to me that PFC Pitcher, being the son of a United Methodist minister and an active member of the United Methodist Church which supports conscientious objectors, would not have applied for a conscientious objector's draft clas-

---

obtained in writing and made a part of the file.

e. DD Form 1589 (Department of Defense Summary Sheet for Review of Conscientious Objector Application) will be completed.

f. The application for discharge, together with the inclosure(s), DD Form 1589, reports of interviews, and the officer's recommendation or waiver required by d above will be forwarded directly from division or installation level to The Adjutant General, ATTN: AGPO, Department of the Army, Washington, D. C. 20315, in triplicate (original and two copies).

(1) The comment by unit commander on DA Form 2496 will include the following information:

(a) Whether approval or disapproval is recommended. The reason(s) therefor will be included.

(b) Duty and primary MOS (enlisted personnel only).

(c) Whether medical board or physical evaluation board proceedings are pending or appropriate.

(d) Whether under investigation, under charges, awaiting result of trial, absent without leave, or whether any flagging action has been taken in accordance with AR 600–31.

(2) Subsequent forwarding comments on DA Form 2496 will include recommendation for approval or disapproval and any other remarks that may be pertinent.

g. The Adjutant General, Department of the Army, will coordinate with the Selective Service System.

h. When a request for discharge is denied, The Adjutant General will furnish the applicant the reason why classification as a conscientious objector is not approved."

4. In his application for discharge, Pitcher agreed to engage voluntarily in post-military work of the nature encompassed by the civilian work program administered by the Selective Service.

sification before he enlisted. The fact that he enlisted rather than waiting to be drafted indicates that he felt he could serve in the armed forces. It also seems illogical that his religious convictions could have been so radically changed in the few months after his association with the Holy Spirit Church to the extent that he now cannot serve in a non-combatant status."

The various commanding officers in the chain of command recommended disapproval of Pitcher's request, and on May 19, 1969, by order of the Secretary of the Army, Pitcher's application for discharge was denied with the comment: "Evidence indicates that applicant's claim is based on a personal moral code and not upon religious beliefs."

On June 11, 1969, the district court denied Pitcher's petition for habeas corpus. The court, although of the opinion that Pitcher had not exhausted his administrative remedies, assumed jurisdiction and found that there was basis in fact for the Army's denial of Pitcher's request. Pitcher's motion for stay pending appeal was denied by this Court. Pitcher v. Laird, 415 F.2d 743 (5th Cir. 1969).[5]

*Exhaustion of Administrative Remedies*

In its order denying habeas corpus relief, the district court stated that Pitcher had not exhausted his administrative remedies. The court, however, assumed jurisdiction and denied relief on the merits. The government initially argued as one of its grounds for affirmance that Pitcher had not exhausted his administrative remedies, *i. e.*, that he did not appeal the denial of his application for discharge to the Board for Correction of Military Records. Therefore, the government contended, the district court did not have jurisdiction over Pitcher's petition.

Because of a change in Department of Justice policy, the government no longer contends that Pitcher's failure to appeal the denial of his request to the Board for Correction of Military Records constitutes a failure to exhaust administrative remedies.[6] Realizing, however, that neither party can waive jurisdictional defects,[7] we find that the district court had proper jurisdiction over Pitcher's petition for habeas corpus.

We agree with the Fourth and Second Circuits that where neither court-martial nor military justice procedures are pending, an unsuccessful applicant for post-induction conscientious objector discharge does not have to appeal to the Board for Correction of Military Records in order to exhaust his available administrative remedies. United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706–707 (4th Cir. 1969); Hammond v. Lenfest, 398 F.2d 705, 713 (2d Cir. 1968); United States ex rel. Healy v. Beatty, 300 F.Supp. 843, 845–846 (S.D.Ga.1969); Gann v. Wilson, 289 F.Supp. 191 (N.D.Cal.1968); Crane v. Hedrick, 284 F.Supp. 250, 253 (N.D.Cal.1968). *But see* Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969); Noyd v. McNamara, 378 F.2d 538 (10th Cir. 1967).[8]

---

5. Later on October 8, 1969, Justice Black ordered that the deployment of Pitcher from the continental boundaries of the United States be stayed until the Supreme Court could act on his Application for Stay Pending Appeal. No further action by the Supreme Court has been brought to our attention.

6. Letter of November 25, 1969, to this Court based on United States Department of Justice Memorandum No. 652, October 23, 1969.

7. People's Bank v. Calhoun, 102 U.S. 256, 260–261, 26 L.Ed. 101 (1880); Page v. Wright, 116 F.2d 449, 453 (7th Cir. 1940); 1 Moore, Federal Practice ¶ 0.60 [4] (2d ed. 1964); 1A Barron & Holtzoff, Federal Practice and Procedure § 370 (Wright ed. 1960).

8. This Court in In re Kelly, 401 F.2d 211, 213 (5th Cir. 1968), viewed the requirement of exhaustion, as did the Second Circuit in Hammond v. Lenfest, *supra*, "to be based on principles of comity and

As noted above, this Court denied Pitcher's Motion for Stay Pending Appeal. In denying the motion, the Court commented on Pitcher's exhaustion of administrative remedies:

"Without prematurely evaluating the merits of petitioner's case, the likelihood that petitioner will prevail is somewhat lessened by the narrow range afforded this Court in reviewing military habeas corpus matters. See Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Gorko v. Commanding Officer, 314 F.2d 858, 859 (10th Cir. 1963). Furthermore, respondent urges that petitioner has failed to exhaust his Military Administrative remedies by failing to petition the Board for Correction of Military Records. The District Court was also of this opinion. We note, without prejudice to petitioner's future arguments, that respondents' contentions have at least an appearance of correctness. See McCurdy v. Zuckert, 359 F.2d 491 (1966)."

Pitcher v. Laird, 415 F.2d 743, 745 (5th Cir. 1969).

McCurdy v. Zuckert, 359 F.2d 491 (5th Cir. 1966), is distinguishable from this case. *McCurdy* involved a general discharge for unfitness by a Board of Officers. The district court, although denying McCurdy's request for a temporary injunction, retained jurisdiction until McCurdy had an opportunity to have his case reviewed by the Air Force Board for Correction of Military Records. This Court, holding that the district court lacked jurisdiction, noted that under 10 U.S.C.A. § 1553 (supp.) McCurdy could have a full hearing to review his discharge.

In this case Pitcher, an unsuccessful applicant for conscientious objection discharge, fully complied with the procedure for conscientious objection discharge set forth in Department of Defense Directive 1300.6 and Army Regulation 635–20.[9] In the limited factual situation of this case—where court-martial or military justice procedures are not pending—we hold that Pitcher had exhausted all available administrative remedies.

### Basis in Fact

The district court found that there was basis in fact for the Army's denial of Pitcher's request for discharge. Pitcher's request for discharge can only be understood in the context of the general procedures adopted by the military for dealing with conscientious objectors. Until 1962, the Department of Defense had no procedures permitting the discharge of military personnel for reason of conscientious objection. But, in 1962, pursuant to 10 U.S.C.A. § 133, *see* Hammond v. Lenfest, 398 F.2d 705, 708 (2d Cir. 1968), the Secretary of Defense issued Department of Defense Directive (DOD) No. 1300.6, which established a policy permitting discharge for valid conscientious objection claims.

The Army's criteria for examining conscientious objection claims is enunciated in DOD 1300.6 V:

"Section 6(j) of Title I of the MSS Act (reference (c)) provides an exemption from combatant training and service in the Armed Forces of the United States for any person 'who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.' The same subsection further provides that ' "re-

---

not as an imperative limitation of the scope of federal habeas corpus power." We further noted that in *Hammond* no court-martial or military justice procedures were pending.

This Court's later decision in United States ex rel. Berry v. Commanding General, 411 F.2d 822 (5th Cir. 1969) is not contrary to our holding. In *Berry* applicants after conviction by Special Courts-

Martial were challenging the legality of post-trial confinement, pending review in the military courts. The Court found that the available military judicial remedies had not been exhausted.

9. Both the Defense Directive and the Army Regulation provide that final determination on requests will be made at Departmental headquarters. DOD 1300.6 IV 3.; Regulation 635–20, 1. d.

ligious training and belief" does not include essentially political, sociological, or philosophical views or a merely personal moral code.' "

As the applicable standards in determining the validity of such claims, the Directive, DOD 1300.6 IV 3. b., further provides:

> "Since it is in the national interest to judge all claims of conscientious objection by the same standards, whether made before or after entering military service, Selective Service System standards used in determining 1–0 or 1–A–0 classification of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service."

In accordance with this Directive the Army promulgated its own implementing regulations, Army Regulation 635–20.[10] Pursuant to the provisions of Regulation 635–20, Pitcher was interviewed by an Army chaplain, a field grade officer and a medical officer. The Chaplain, Major Howard W. Marsh, thought Pitcher to be sincere in his conscientious objection beliefs and also found that Pitcher's objection to military service on religious grounds was only recently formed. The field grade officer, Lt. Colonel Denis F. Sheils, found "difficult to determine the sincerity" of Pitcher's application but stated that his conscientious objections were philosophical views or personal moral codes that he had developed since his association with the Church of the Holy Spirit. On May 19, 1969, by order of the Secretary of the Army, Pitcher's application for discharge was denied with the comment: "Evidence indicates that applicant's claim is based on a personal moral code and not upon religious beliefs."

Before proceeding to our discussion of the conscientious objection claim, we point out the narrow range afforded

this Court in reviewing military habeas corpus matters. United States ex rel. Brooks v. Clifford, *supra* 409 F.2d at 705; Hammond v. Lenfest, *supra,* 398 F.2d at 710; *see* Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). "Judicial hesitancy when faced with matters touching on military affairs is hardly surprising in view of the doctrine of separation of powers and the responsibility for national defense which the Constitution * * * places upon the Congress and the President. Moreover, the ever-present and urgent need for discipline in the armed services would alone explain the relative freedom of the military from judicial supervision." Hammond v. Lenfest, *supra.*

■ Our reluctance to review discretionary military orders, however, does not imply that any action by the Army is beyond the reach of this Court. We do not have to determine whether the Army *must* provide regulations for discharge of conscientious objectors in light of the congressional policy to exempt those persons conscientiously opposed to participation in war by reason of religious training and belief. Once regulations have been provided, however, the Army cannot apply them in an arbitrary or capricious manner. United States ex rel. Brooks v. Clifford, *supra,* 409 F.2d at 706; Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969); Hammond v. Lenfest, *supra,* 398 F.2d at 715.

■ Although Pitcher initially raised his conscientious objection claim after enlistment into the armed forces, our scope of review is identical to review of conscientious objection claims presented to local draft boards prior to induction: whether there is any basis in fact for the finding that an individual has not presented a valid conscientious objection claim.[11] Thus, we must de-

10. See note 2, *supra.*

11. Brown v. Resor, 407 F.2d 281, 286 n. 12 (5th Cir. 1969); Crane v. Hedrick,

284 F.Supp. 250, 254–255 & n. 12 (N.D. Cal.1968); *see* Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed.

termine whether or not there was any basis in fact for the Army's denial of Pitcher's discharge request on the ground that his conscientious objection claim was based on a personal moral code and not upon religious beliefs.

From Pitcher's written request for discharge under Regulation 635–20, it is clear that his conscientious objection beliefs are based substantially on religious training and belief.[12] Pitcher was reared in a Christian home and depended principally upon his father, a Methodist minister, for his religious training.[13] After enlistment in the Army, he attended, participated in the activities, and

---

567 (1946). The Fourth Circuit in *Brooks* concluded that a valid conscientious objection claim by a member of the armed forces should be recognized:

"The fact that petitioner delayed the assertion of his claim until after his views had been formulated and that that did not occur until after his military service had begun and he had completed basic training and advanced or special weapon training is no ground to deny him discharge either under the Act, or the established administrative procedures, if in reality his views are sincerely held and are the result of religious training and belief. Indeed, the administrative procedures were devised for the very purpose of permitting the assertion of a claim of conscientious objection and proof of it, entitling the claimant to be discharged, when the objection was not formulated until after military service had begun."

409 F.2d at 707.

12. The Supreme Court's definition of religious training and belief is set forth in United States v. Seeger, 380 U.S. 163, 166, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965):

" * * * the test of belief 'in a relation to a Supreme Being' is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption. Where such beliefs have parallel positions in the lives of their respective holders we cannot say that one is 'in a relation to a Supreme Being' and the other is not."

13. In commenting on his religious training and beliefs, Pitcher explained his objection was based entirely on religion:

"(a) Description of the nature of belief which is the basis of claim—

"Throughout the years of my life, with the aid of thought, study, and prayer, I have come to accept many things as truths by which I give a meaning and purpose to my life.

"I believe in God who is the supreme being, creator and ruler of the universe. I believe He had a son who came to earth as Jesus Christ of Nazareth. While He was on earth He taught, and lived his teachings, which were the word of God.

"I believe that God created man to live in peace and harmony with his fellowmen. For all time man has been striving to achieve this peace. One method of achieving this goal of brotherhood and peace has been war, used to bring a group of people around to one way of thinking. It is my belief the love Christ taught, and not war, is the way humans can finally achieve the brotherhood and peace for which they were created.

"I believe that by following the teachings of Christ I will be able to gain the peace and harmony with my fellow-men that I was created for. I believe that by faithfully following his teachings I will be able to live the best and most satisfying life on earth and I will gain everlasting life at the time of my death.

"I believe in the many teachings of Christ. I feel that his most important teachings, and the one that best explains my application for 1–0 status, are his teachings on love. Paul spoke of this love, in his letters to the Romans (Romans 13:8–10) when he said 'Love is the fulfilling of the law.' By this he meant that if you loved your fellow-man to the fullest extent you would breach no laws, for to perfectly love your fellow-man you could not lie, cheat, steal, or kill. This is what he meant by another part of Romans 13:8–10 when he said 'Love does no wrong.' Paul said 'This is the love of Christ' and gives it a definition in I Corinthians 13:4–7.

"Christ teaches a perfect, unconditional love. He taught that man should love all men, regardless of whether they are your enemies, or if they smite you or cause you harm. It is this total love, this total giving of ones self that Christ gave, not as a suggestion, but a command, when he said in Mathew 22:39–4 [sic] 'You shall love your neighbor as yourself.' He went on to be more explicit in Luke 6:26–48.

"Christ also teaches that I owe my first allegiance to God and God only.

worked at the Church of the Holy Spirit, an Episcopal Church Mission in downtown San Antonio. Because of his involvement in these activities, Pitcher developed his conscientious objection beliefs.

"Due to my relationship with the Church of the Holy Spirit I have come to a better understanding of God and the life as exemplified through Christ he wants me to lead. Because of this understanding I have decided to give my life to the service of God without compromise. Having arrived at this decision I realized that my defense was nothing but God. If I had truly given my life to him and attempted to follow his commandments he would be faithful in my defense as explained in Revelation 13:9. Since that time I have lived with the growing realization that no matter what my job is in the military I was still a member of a military organization, whose operational principles involve the taking of lives and the destruction of property, and I was a Christian who believed that killing was against the principles of God as taught by Christ. I discovered that the medical corps was designed to save lives, not for the sake of saving lives, but, rather to support the taking of lives as exemplified in the corps motto, 'To conserve the fighting strength.'

It is not my right or duty to set man before God. My allegiance is to him and compromise is not permitted.

"Because of my belief in the teachings of Christ and the fact I am allowed no compromise with God, I feel that I am commanded to love my fellowman in spite of any action he may take against me. As a result of this feeling I have found that I cannot participate in, or in any way support, any person or organization who for any reason do not meet men with the love that Christ taught.

"As a member of the military service, regardless of my position there-in I am a functional part of an organization which engages in the destruction of

"Upon the basis of a great deal of prayer and meditation, I realized that I could not in any manner support the use of violence against my brother whom I am commanded, as a Christian, to love."

■ In denying his request for discharge, the Army concluded that Pitcher's beliefs were based on a personal moral code and not upon religious beliefs. However, in the preceding paragraph, we noted that Pitcher's conscientious objection beliefs were founded substantially on his religious training and beliefs. "Before a conscientious objector classification may be denied on the ground that the applicant's beliefs are based upon 'political, sociological or philosophical views or on a merely personal moral code,' those factors must be the sole basis of his claim for the classification." United States v. White, 421 F.2d 487 (5th Cir. 1969); United States ex rel. Brooks v. Clifford, *supra*, 409 F.2d at 708; Fleming v. United States, 344 F.2d 912, 915 (10th Cir. 1965); *see* United States v. Seeger, 380 U.S. 163, 186, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965). As expressed by the Fourth Circuit in *Brooks*:

" * * * We find it unnecessary to attempt any clearer definition or to examine the record to determine the presence or absence of support for the

human life as a means to an end. I feel that through Christ I have found a better way to achieve the peace that man seeks.

Even as a medical corpsman (91A–10) I am still in the position of supporting the combat force which makes up the United States Army. As stated in FM 8–10, 'The primary duty of medical troops as of all other troops is to contribute their utmost to the success of the command of which the medical service is a part.' For these reasons I feel, even in my corpsman status, that it is not my place to serve in support of an organization of a military nature when I have found, through God, a far greater answer to the worlds problems."

conclusion, because we are satisfied that even if petitioner was motivated in part by a personal moral code, he is still entitled to the exemption because of the unquestioned finding that he was also substantially motivated by views derived from religious training and belief.

"In United States v. Seeger, *supra,* the Court discussed the situation of registrants whose beliefs are based on a 'merely personal moral code.' In dealing with this exception to the exemption, the Court noted that it had construed the statutory definition of a conscientious objector broadly and 'it follows that any exception to it must be interpreted narrowly.' Significantly, the Court continued, '[t]he use by Congress of the words "merely personal" seems to us to restrict the exception to a moral code which is not only personal but *which is the sole basis for the registrant's belief* and is in no way related to a Supreme Being.' 380 U.S., at 186, 85 S.Ct. at 864 [emphasis supplied]. Thus, we read *Seeger* as holding that a disqualifying 'merely personal code' is one which, unlike that of petitioner, constitutes the sole basis for his beliefs."

409 F.2d at 708

 Since the *sole* basis of Pitcher's conscientious objection claim is not a personal moral code, his request for discharge cannot be denied on grounds that his beliefs are based upon philosophical views or a personal moral code. All of the evidence establishes that his claim is sincere and is substantially founded on religious training and beliefs. Therefore, there is no basis in fact for the Army's denial of Pitcher's request for discharge. On remand the district court is to issue a writ of habeas corpus directing that Pitcher be released and discharged from the United States Army.

Reversed and remanded.