**Application of Dennis A. TAVLOS, Appellant, for a Writ of Habeas Corpus.**

No. 28537.

United States Court of Appeals, Fifth Circuit.

July 13, 1970.

**860**

Mark F. Howell, El Paso, Tex., for appellant.

Romualdo Cesar Caballero, Atty., U. S. Dept. of Justice, Tax Div., Criminal Section, Washington, D. C., Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from denial of a writ of habeas corpus by the District Court. The Army refused the application of petitioner, Dennis Tavlos, for separation as a conscientious objector. He applied to the District Court for the writ. It denied relief and Tavlos appealed. We reverse.

Tavlos was commissioned as a second lieutenant upon completion of his college R.O.T.C. program in January, 1968. In June, 1968 he began active duty at Ft. Bliss, Texas.

On February 26, 1969 Tavlos applied for separation from the Army on conscientious objector grounds, pursuant to Army Regulation 635–20, which covers conscientious objection developed subsequent to entry into the active military service. Paragraph 3(b) (1) of that regulation excludes from its scope conscientious objection which existed but was not claimed prior to entry on active duty. In his application Tavlos included, inter alia, statements from an Army chaplain, an Army psychiatrist and a Judge Advocate General Corps officer. His unit commander, Captain Hart, furnished a statement for the file on March 6. All these persons except Captain Hart recommended discharge.

In April the Adjutant General informed Tavlos that the Secretary of the Army had disapproved his request for discharge because his objection to service was based on objection to a specific war and was rooted in a personal moral code. Tavlos applied for habeas corpus. The District Judge considered that petitioner had not exhausted his administrative remedies, but concluded that he would consider the merits of the petition. He denied the application by an order stating only a conclusory finding that there was basis in fact for the Army's action.

In this court, as a result of change in Army policy, the government has abandoned its contention that administrative remedies were required to be exhausted and had not been exhausted.[1]

---

1. This court recently held that "where neither courtmartial nor military justice procedures are pending, an unsuccessful applicant for post-induction conscientious objector discharge does not have to appeal to the Board for Correction of Military Records in order to exhaust his available administrative remedies." Pitcher v. Laird, 421 F.2d 1272, 1276 (5th Cir. 1970). See also United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969).

Claims of conscientious objection are to be viewed by the same standards whether made before or after entering military service. Thus the District Court was required to determine if there was any basis in fact for the Army's denial of Tavlos' request for discharge. Our standard of review of the District Court is the same as in a case of pre-induction claim of conscientious objector status, Pitcher v. Laird, *supra.*

Because AR 635–20 is directed to objection developed in service, we must consider not only what Tavlos believed but when he came to believe it. As to the substance of belief, AR 635–20(1) states that separation under its provisions is available to "military personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form." This is virtually identical to the conscientious objector provision of the Selective Service Act of 1967, 50 U.S.C. App. § 456(j). Conscientious objection must be based on religious training and belief, Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428, 434 (1955). One must be willing to obey the commands of his spiritual sovereign even when those commands conflict with the commands of the temporal sovereign, Kessler v. United States, 406 F.2d 151 (5th Cir. 1969).[2] And one must oppose participation in war in any form, United States v. James, 417 F.2d 826 (4th Cir. 1969). Requests for discharge will not be accepted when based on objection to a particular war, AR 635–20, para. 3(b)(4).

There is no basis in fact for the Army's conclusions that Tavlos' objection to military service was rooted in a personal moral code and based on objection to a specific war. Tavlos' file which he compiled pursuant to AR 635–20 revealed that he was brought up by devout Greek Orthodox parents and that he always has been an uncommonly religious person. Included was a letter from a minister which contains the following:

> His life style is very religious and has matured from early childhood religious training. Being taught that God made all men and therefore that all men are brothers, has caused his great concern when contemplating the possibility of being ordered to take another's life. This refusal to violate the sacredness of human life comes from a reverence and respect for God.

Christopher Carlsen, Tavlos' brother-in-law, wrote a letter for the file saying that Tavlos was intensely religious and made important decisions in his life on the basis of what he thought God would want him to do.

Tavlos clearly indicated that he would follow the dictates of divine law even when that law demanded that he violate human law. In his application for separation he said:

> I hold my allegiance to God above my nation, president, or any merely human law, as it is He who in the end will judge me. God has commanded me not to kill, to kill is the greatest sin and for no reason would I, or could I, kill my fellow man.

Carlsen stated in his letter that, while in the Army, Tavlos "became aware that he might really receive an order to kill, and his belief in God told him that this was wrong. He wrote * * * that he would have to be killed rather than kill in such a circumstance."

Tavlos stated his opposition to participation in war in any form, saying: "I cannot participate in war nor can I aid and abet an army in war by serving in noncombat training and service due to my religious beliefs and conscience." He sought discharge from the Army because "I know that this is the only action available to me which is consistent with my religious beliefs." One of Tavlos' fellow officers stated in a letter in

---

2. The standard for "religious training and belief" applied in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), is unnecessary to our decision, since Tavlos' beliefs satisfy pre-*Welsh* standards, as will appear below.

the file: "Most assuredly, Dennis Tavlos does not advocate nor believe in war * * *. He does not believe the taking of another's life is in any way a satisfactory means for solving differences among men." Another friend and fellow officer wrote: "It is apparent to me that Dennis definitely believes that a human life should not be taken in any acts of violence, and furthermore that he could not take a human life."

As to the time at which his views solidified, in his application Tavlos said this:

> While I was confused and uncertain upon entering active duty as to my duty to my country, war and killing, and, while I was uncertain at one time of my own convictions and conscience if I were to be faced with the possibility of employing violence for my country, my involvement in the Army led up to my realization that no matter how much I wished to serve my country, I could not in conscience do so if I were ever to be required to employ violence. I cannot participate in war nor can I aid and abet an Army in war by serving in the non-combat training and service due to my religious beliefs and conscience.

The JAGC officer recommended that Tavlos be discharged, but, while stating that he was not convinced of either Tavlos' sincerity or lack of it, said this:

> Based upon the interview with LT Tavlos and a reading of his application, there appears nothing to impugn the sincerity of his belief against war except the time sequence. His religious beliefs were strong from early childhood and the "kill attitude" of ROTC summer camp bothered him greatly, but the crystallization of his conscientious objection never occurred until he entered on active duty. LT Tavlos stated that the realization that he may have to engage in war never really presented itself until after he came onto active duty. In short, it appears that the basic belief was present long before the present, but that its application was not foreseen

by this individual until it was brought him to him that he, himself, may have to participate directly in the war.

The psychiatrist reported:

> While in college he was a member of ROTC where his strong feelings against physical combat first begin to form. After being in the armed services a short time, however, his feelings did crystallize to the point where he could state unequivocally that he was a conscientious objector.

Tavlos' sister described the period before he reported for active duty as one in which "the thought of applying for Conscientious Objector status never crossed his mind." She described his experience upon entering active duty in this way:

> The last experience was reporting to Fort Bliss, in El Paso. It was there that the full nature of his position and his ideas finally became clear and unavoidable to him. His experience at Fort Bliss basically amounted to this: it became obvious to him that the way the Army is structured makes him an officer above all else, even his most sacred religious beliefs, must be completely ignored in the face of a military order. This realization frightened him and made him look into the possibility of applying for the status he is now applying for. I believe that my brother wishes above all to fulfill his military obligation to his country and that he hopes this will be permitted him in some other form than participating in war; his application for Conscientious Objector status comes only as a result of the realization and the fear of a confrontation between his military duty not to refuse an order and his religious duty not to refuse God.

■ There is nothing in the file contrary to the above, as to either substance of beliefs or time of solidification, sufficient to constitute basis in fact for denying the discharge. The government points to Tavlos' participating in R.O.T.C., receiving his commis-

sion, and entering upon active duty as evidence of lack of opposition to war. But the regulation not only is designed for, but is limited to, the situation of change in viewpoint after active duty commences. To deny discharge on grounds such as these would frustrate the purpose of the regulation and deprive it of any field of operation for the numerous persons training and receiving officers' commissions before entering active service.

As support for its conclusion of objection to a particular war the government relies most strongly on Captain Hart's letter, which says:

> LT Tavlos has stated to me that he would be willing to serve in Korea or other oversea area, but not Vietnam, since he objects to the shooting war. He has also stated that he thinks he would have been willing to serve during WWII or during any future war in which the United States was directly attacked.

But then Captain Hart added: "These comments were made shortly after his assignment to my unit [August, 1968] and prior to 'solidification' of his decision to claim conscientious objection to military service." Thus, the most that one can infer from Hart's letter was that Tavlos was not opposed to all wars in the summer of 1968 and that his views underwent a change after active duty commenced. This is entirely consistent with Tavlos' own story of how his views solidified into recently formed opposition to military service. Rather than showing that Tavlos still adhered to "selective conscientious objector" views (i. e., objection to some but not all wars) it suggests, if anything, the contrary.

■ The government seeks to flesh out its case by a letter written by petitioner to Senator J. W. Fulbright (D.–Ark.) in December, 1968. It is not shown that the letter was a part of the file submitted to the Adjutant General, and the government implicitly concedes that it was not part of the file by its argument that a copy of the letter was elsewhere in government channels and "available" to the deciding agency, and by a separate argument that it was proper for District Court consideration because it tied in with other letters that were in Tavlos' file. Whether there was basis in fact for denial must be determined by considering only the evidence before the deciding agency. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Keefer v. United States, 313 F.2d 773 (9th Cir. 1963); United States v. Alvies, 112 F. Supp. 618 (N.D.Cal.1953); United States v. Ruppell, 278 F.Supp. 287 (E. D.N.Y.1968); Packard v. Rollins, 307 F.Supp. 1388 (W.D.Mo.1969).

Reversed and remanded with instructions to grant the writ.

GEWIN, Circuit Judge (dissenting).

With full deference to the views expressed by my brothers of the majority, I am compelled to dissent. In my view the majority has erred in concluding that there was no basis in fact for the Army's action as found by the district court. If there was a basis in fact for the denial of the Lieutenant's application for discharge, the judgment of the district court must be affirmed. Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970). It should also be remembered that he has no constitutional right to exemption from military service. United States v. Crouch, 415 F.2d 425 (5th Cir. 1969).

In addition to the statement of Captain Hart, who was closely associated with Tavlos and was his immediate supervisor, the majority opinion overlooks many inconsistent statements made by Tavlos as well as his thoroughly inconsistent actions. Actions or statements which are at variance with the exemption claimed can provide a basis in fact for the denial of such claim. Inherent in the question also is the timeliness with which the alleged religious belief in opposition to military combat is embraced by the applicant. Carson v.

United States, 411 F.2d 631, 633 (5th Cir. 1969).

Although appellant claims to have been deeply religious since childhood and to avidly follow the tenets of his particular denomination, he apparently excuses his delay in making his views known to a lack of understanding of his own faith. The record clearly demonstrates that he voluntarily participated in R.O. T.C. programs in college, received his commission and entered upon active duty and continued such active duty for sometime before he decided that he should be relieved of any further military obligation to his country. It does not seem right to permit an army officer, who has participated in the military program over a long period of time, and who has received the pay, education and care provided by the army, to be relieved of all military obligation to his country based upon his own vague and conflicting assertions supported by the ambiguous and equivocal statements of immediate members of his family. Considering all the facts and circumstances the court goes much too far in holding that there is no basis in fact for the action taken by the Army and for the decision of the district court.

It is important to remember that the Government is also entitled to justice in this case. All of the expenditures of the Government have been freely accepted by Tavlos, but when he was called upon to respond he belatedly refuses to do so. Such action appears to be inconsistent with the claimed religious beliefs upon which he now relies so heavily. Moreover, it would appear that such tenants would dictate different action in view of the sacrifices made by so many other citizens to preserve the very system to which Tavlos appeals to relieve him of his obligation to his Government. Now that he is free from all of his military obligations perhaps he will find some other way to balance the scales of justice within the religious concepts which he so avidly claims to espouse.