**Guy R. BOUTHILLETTE, Petitioner,**

v.

**COMMANDING OFFICER, NEWPORT NAVAL BASE, NEWPORT, RHODE ISLAND, Secretary of the Navy, and Secretary of Defense, Respondents.**

**Civ. A. No. 4347.**

United States District Court,
D. Rhode Island.

Oct. 9, 1970.

---

Philip A. Mason, Boston, Mass., Albert B. West, Providence, R. I., for petitioner.

Lincoln C. Almond, U. S. Atty., and Joseph C. Johnston, Jr., and Everett Sammartino, Asst. U. S. Attys., Providence, R. I., for respondents.

## OPINION

PETTINE, District Judge.

This matter is before the court on a petition for a writ of habeas corpus directed against the respondents alleging that the petitioner is being illegally restrained of his liberty at the Newport Naval Base, Newport, Rhode Island.

*Jurisdiction*

Jurisdiction is founded on 28 U.S.C. § 2241 and 28 U.S.C. § 1391(e) in that the petitioner and respondent Commanding Officer are present in the District of Rhode Island and the respondents Secretary of the Navy and Secretary of Defense are subject to the jurisdiction of this court.

*Findings of Fact*

The following itemization is a panoptic chronology of all relevant facts pertaining to the petitioner's actions (as stipulated by the litigants):

| | |
|---|---|
| January 13, 1965: | registered for Selective Service. The section of the classification questionnaire submitted at the time of registration entitled "Conscientious Objector" was left blank; |
| May 22, 1965: | granted a student deferment and classified 11–S; |
| June–September 1965: | during this period while on summer vacation he worked in the laboratory of the Edwards Plant, Saco, Maine on a metal component part of the M–60 machine gun; |
| June 10, 1968: | classification changed to 1–A; |
| July 8, 1968: | classified 11–A, having been appointed a teaching assistant at Northeastern University, Boston, Massachusetts; |
| May 26, 1969: | teaching appointment having terminated, he was again placed in the 1–A status; |
| May 29, 1969: | appealed his 1–A classification, requesting a further deferment to pursue graduate studies; |
| June 17, 1969: | applied for admission to the Navy Officer Candidate School; |
| July 8, 1969: | appeal of 1–A classification denied; |
| July 30, 1969: | ordered to report for induction on August 27, 1969; |
| August 13, 1969: | enlisted in the USNR–CACHE program with a planned date of active duty of December 9, 1969; |
| August 26, 1969: | application for admission to Officer Candidate School denied; |
| September 8, 1969: | induction cancelled and classified 1–D (reservist); |
| November 18, 1969: | requested reconsideration of his application to attend Officer Candidate School. He wrote a |

letter [1] wherein he stated among other things, "* * * I joined the Navy with every intention of doing so as an officer, and I am most certainly going to do everything in my power to prevent spending this period as an enlisted man."

December 3, 1969: requested SSS Form 150 [conscientious objector form] which was completed by him and filed on January 2, 1970 with his local board;

January 8, 1970: local board returned the application notifying petitioner that since he was in the Navy CACHE program awaiting an active duty assignment, they could not make any determination of his claim to conscientious objector status;

January 22, 1970: entered on active duty with the Navy. He then processed an application for discharge in accordance with Department of Defense Directive 1300.6 VI B.8 and Department of the Navy Regulation BUPERSMAN 1860120. In the course of this procedure, he was interviewed by a Navy psychiatrist, Field Officer and Naval Chaplain, all of whom essentially concurred in finding the petitioner sincere with a strong moral code of ethics and religion—with beliefs based on religious principles.[2]

------◆------

1.
"38 Westland Ave.
Boston, Mass. 02115
November 18, 1969

Chief of Naval Personnel
Pers B–623
c/o Naval Recruiting Station
Boston, Mass.

SUBJECT: Guy R. Bouthillette and request for reconsideration for OCS.

Dear Sirs:

When I joined the Navy, it was with the assumption that I would be accepted into the OCS program. This assumption was based on the 'good judgment' of Navy career counselors and recruiters who told me that with my background (oceanographer persuing doctoral program) I would most certainly be accepted into OCS. However, this was not so! I was found not qualified for OCS, and with no apparent explanation. I can't comprehend someone completing a doctoral program in oceanography not being qualified as a Navy officer.

Recent consultation with several Naval officers led me to contact this office for this request. Contrary to the opinion of these officers, I feel that legal procedures are extremely noxious and not necessary. However, I joined the Navy with every intention of doing so as an officer, and I am most certainly going to do everything in my power to prevent spending this period as an enlisted man.

All executive officers at the recruiting station have sympathized with me, however also stating that the "Cache" program was binding. My active duty date is December 9, 1969. I would have contacted you sooner, however I had been informed by members of the recruiting station that nothing could be done. Therefore, I anxiously await your reply.

Sincerely,
Guy R. Bouthillette /s
Guy R. Bouthillette"

2. The chaplain's pertinent remarks follow: "I believe in this man's sincerity for his beliefs pertaining to his present status. I am also of the belief Bouthillette's present thinking is based on religious principles. During my interview with him, I noted these principles were the sole foundation of his position as against war and violence in general. This re-

The officer specifically recommended his release from the service and the petitioner's application was forwarded to the Chief of Naval Personnel with the independent concurrence of the Commanding Officer, Recruit Training Command, Naval Training Center, Great Lakes, Illinois;

May 7, 1970.: Informed that his request for administrative discharge as a conscientious objector had been denied.

---

The Navy Board doubted the petitioner's credibility, citing his work during the summer of 1965 on the M–60 machine gun part and his application for Navy Officer Candidate School on June 17, 1969 as being inconsistent with his allegations of being a lifelong pacifist. The Board specifically referred to the language cited *supra* under the events of November 18, 1969 as being particularly inconsistent with the religious development claimed by the petitioner.[3]

cruit also stated that he was willing to suffer, such as confinement in the brig, for his beliefs.

In view of the above paragraph, I would state Guy R. Bouthillette is a sincere and truthful conscientious objector."

The psychiatrist stated:

"He seems sincere. His beliefs don't seem to be the product of psychopathology."

The officer concluded:

"2. There is no doubt in my mind that Guy Roland Bouthillette is sincere in his convictions, and would have never entered naval service had he not been misled into believing he would perform his obligation in the field of Oceanography. His moral code of ethics and religious fiber is strong. His past has been primarily a study of 'life' and his only desire is to further the giving and not the taking of life, even if there was no other way. The history of his past background indicates his beliefs are not superficial, but founded on principles which he strongly attributes his life to. Finally, the applicant's willingness to accept the civilian work program (in lieu of military service) administered by the Selective Service [sic].

3. In view of the aforementioned facts and opinions, it is recommended that the subject named be separated from the naval service for the convenience of the Government by reasons of conscientious objector [sic]."

3.

"Pers–B221–cc
7 May 1970

From: Chief of Naval Personnel
To: SN Guy Roland BOUTHILLETTE, USN, D10 42 39
Via: Commanding Officer
Recruit Training Command
Naval Training Center
Great Lakes, Illinois 60088
Subj: Discharge by reason of Conscientious Objector; request for
Ref: (a) Your undated req

1. By reference (a) you requested discharge by reason of conscientious objection.

2. Your request for discharge by reason of conscientious objection was reviewed in the Bureau of Naval Personnel by an established Board which recommended that you not be discharged. An examination of your application, together with the material you sent direct to the Chief of Naval Personnel and which is maintained in your official record in Washington, causes the Board to doubt your credibility. You state in your application for conscientious objector status that 'I have always been a sincere pacifist, never believing in the use of force as a means to an end, and certainly never ever to the elimination of human life.' Nevertheless, during the summer of 1965 you were directly involved in the manufacture of the M60 machine-gun. You applied for Navy Officer Candidate School on 16 June 1969. Both of these actions are inconsistent with the

*Exhaustion of Administrative Remedies*

■ Preliminarily there is no doubt that 28 U.S.C. § 2241 is a proper avenue for judicial review of the Navy determination and that the "custody" prerequisite for jurisdiction is satisfied here. See e. g. Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir. 1969).

■■ The government does not argue the discretionary language in Section IV B, DoD 1300.6 [4] and in this case acquiesces in the position that the petitioner has exhausted his military judicial remedies as a prerequisite to relief by way of habeas corpus in the courts; further it concedes there has been an exhaustion of administrative remedies, for it deems the military decision ripened for judicial review upon the final action of the Chief of the Bureau of Naval Personnel. Apart from the government's concession, this court finds that in this case the failure to exhaust military administrative remedies by not resorting to the Board for Correction of Military Records [5] does not deny the right to judicial review. This was the holding of Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961), and although there is conflicting authority on this point, the view which I take today appears to have been adopted implicitly by the Supreme Court in Craycroft v. Ferrell, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351

(1970), vacating and remanding 408 F.2d 587 (9th Cir. 1969). Furthermore, a member of the armed forces who has been denied an administrative discharge need not be required to await military charges and the exhaustion of military judicial remedies before petitioning for writ of habeas corpus. The need vel non for the exhaustion of such procedures has been expounded by two of the Circuit Courts. The Tenth Circuit in Noyd v. McNamara, 267 F.Supp. 701 (D.Colo.) aff'd, 378 F.2d 538 (10 Cir., 1967), has ruled that the courts are without jurisdiction to entertain an action of a serviceman for habeas corpus relief to establish his status as a conscientious objector unless there is first an exhaustion of military process. On the other hand, the Second Circuit in Hammond v. Lenfest, 398 F.2d 705 (2 Cir., 1968), rejected the *Noyd* doctrine and held to the contrary. (Cf. In re Kelly, 401 F.2d 211 (5th Cir. 1968)).

Since the First Circuit has not spoken to these questions, I feel free to adopt what I think is the better-reasoned view, as set forth in Hammond v. Lenfest, In re Kelly and Ogden v. Zuckert, *supra*. I conclude, therefore, that this court has jurisdiction over the petitioner's claim.

*Court's Review of the Board's Denial*

The scope of judicial review in habeas corpus actions by members of the armed forces seeking discharge as conscien-

---

allegation that you are a lifelong pacifist; and the application to Officer Candidate School is markedly inconsistent with the religious development you claim to have experienced during your college years. Furthermore, it is noted that as recently as 18 November 1969, you requested reconsideration of your application for Officer Candidate School in a letter to the Chief of Naval Personnel. You state in that letter: ' * * * I joined the Navy with every intention of doing so as an officer, and I am most certainly going to do everything in my power to prevent spending this period as an enlisted man.' 3. Accordingly, your application for discharge as a conscientious objector is disapproved.

F. K. WOOD
BY DIRECTION"

4. This language provides, in pertinent part: "Consistent with this national policy, bona fide conscientious objection as set forth in this Directive by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable."

5. A Board is established by each military department under authority of 10 U.S.C. § 1552, and is composed of civilians who are authorized to "correct any military record of that department when he considers it necessary to correct an error or remove an injustice."

tious objectors pursuant to § 6(j) of the Military Selective Service Act of 1967, (50 App. U.S.C.A. § 456(j)) is narrowly limited to the single question of whether there was a basis in fact for denying the claim.[6] If such basis exists then I cannot upset the Navy's administrative decision even if I would reach a different result if I were reviewing all the evidence *de novo*.

■■ Department of Defense Directive 1300.6 (hereinafter DoD 1300.6) establishes uniform policies and procedures for determination of requests for discharge from military service based on conscientious objection. Section IV B thereof, headed "DoD Policy," provides, in pertinent part:

"1. * * * Administrative discharge prior to the completion of an obligated term of service is discretionary with the military Service concerned, based on judgment of the facts and circumstances in the case.

2. A request for discharge after entering military Service based solely on conscientious objection which existed but was not claimed prior to induction or enlistment cannot be entertained. Similarly, requests for discharge based solely on conscientious objection claimed and denied by the Selective Service System prior to induction cannot be entertained. * * * *However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered.* (emphasis added)

3. A request for discharge or assignment to non-combatant duties on the grounds of conscientious objection will be handled on an individual basis, with final determination made at the Departmental headquarters of the person's service in accordance with the facts and circumstances in the partic-

ular case and the criteria outlined in Section V, below * * * * "

There can be no doubt that petitioner was in "military Service," within the meaning of DoD 1300.6 IV B, from the time he joined his Naval Reserve unit. This interpretation is mandated by the language of 1300.6 II, which applies the Directive to all Reserve components of the various branches of the Armed Forces. Furthermore, as noted above, petitioner's local draft board informed him that since he was a member of a Naval Reserve unit awaiting active duty, it was without authority to consider his completed SSS Form 150. Therefore, the basis for petitioner's claim, if it arose at all, arose after his entry into "military Service," and there can be no question of waiver by failure to claim.

The government has emphasized in oral argument that when petitioner entered military Service he knew what duties he would have to perform, and more specifically he knew that he was becoming "an instrument of war;" and the impeachment of the petitioner by the Navy Board resulting in a rejection of his conscientious objector status was bottomed on three specific acts. They cited his work on the M-60 machine gun during the summer of 1965 and his application to attend Officer Candidate School as inconsistent with his allegation that, "I have always been a sincere pacifist, never believing in the use of force as a means to an end, and certainly never ever to the elimination of human life," and that on November 18, 1969 in requesting reconsideration to Officer Candidate School he stated, " * * * I joined the Navy with every intention of doing so as an officer and I am most certainly going to do everything in my power to prevent spending this period as an enlisted man."

■■ It is my opinion that the reasoning exemplified by the government in argument and the Navy Board is clear error. It places every conscientious ob-

---

6. United States ex rel. Brooks v. Clifford, 4 Cir., 409 F.2d 700, 705, see cases cited; United States ex rel. Sheldon v. O'Malley, D.C.Cir., 420 F.2d 1344; Benway v. Barnhill, 300 F.Supp. 483, 486 (D.R.I. 1969).

jector serviceman in a vise from which he cannot extricate himself because it ignores the clearly enunciated precedents articulating the moral and temporal truism that a man's conscience evolves with his experiences—those of the past may become the precursors of today, molding a profound conviction which reaches maturation on confrontation with the actuality of a circumstance.

As Judge Wyzanski pointed out when considering just this point—the recent crystallization of one's beliefs:

> "Unlike the authors of the regulation, the Board appears hesitant to recognize that men of the highest standard of conscientious belief may put off their final commitment until necessity gives them no choice."

Silberberg v. Willis, 306 F.Supp. 1013, 1021 (D.Mass.1969), rev'd on other grounds, 420 F.2d 662 (1st Cir. 1970).

In Talford v. Seaman, 306 F.Supp. 941, 945 (D.Md.1969), the court commented:

> "One does not have to be a Ghandi—a man who will not resist under any circumstances—in order to qualify as a conscientious objector under the applicable military regulations."

And as was noted by Judge McEntee in *Bates, supra*:

> " * * * by holding that petitioner's present claim is inconsistent with his prior voluntary enlistment, the Commandant puts him in a 'hanged if he does, hanged if he doesn't' predicament. Under DOD Directive 1300.6 IV B2, conscientious objection will not be considered unless it arose after induction or enlistment. By the Commandant's reasoning, therefore, petitioner's claim cannot be considered if it arose prior to his enlistment and is evidence of insincerity if it arose

afterwards. By the force of this logic, no member of the armed services could ever qualify as a conscientious objector."

413 F.2d at 478.

The Department of Defense has provided for the recognition of legitimate claims of in-service conscientious objection and if DoD 1300.6 is to be given any real meaning, then it must be impermissible to rely upon voluntary entry into military service as evidence of insincerity. Similarly, since petitioner has alleged that his beliefs are the result of an ongoing, developmental process, his earlier involvement with the M-60 machine gun cannot be evidence of insincerity, at least where, as here, there was a significant lapse of time between that activity and the date upon which his beliefs allegedly crystallized. If it were otherwise, one could always point to prior activity which was inconsistent with presently-claimed conscientious objection, simply because the present claim was then in an embryonic stages of development which permitted behavioral contradictions.

Respondents contend, however, that petitioner's involvement with the M-60, his enlistment in the Navy, and his desire to attend O.C.S. provide a basis in fact for the denial of petitioner's request to be discharged, since they controvert his statement of life-long pacifism and therefore cast doubt upon his credibility. Thus while petitioner's statement of life-long pacifism is immaterial to his application and qualification for conscientious objector status and in that sense is merely a gratuitous remark, respondents have elevated it to the fact of supreme significance in this case.

While an applicant's credibility is certainly a permissible factor for evaluation of an in-service conscientious objector claim,[7] and although a Military De-

---

7. At the time of petitioner's application, DoD 1300.6 V A(2) provided as follows: "The criteria for determining conscientious objection are not absolute objective measurements which can be applied across the board, but are the result of extensive experience and practices which have been upheld in the Courts in connection with legal obligations for service. Factors to be considered in determining a person's claim of conscientious objection include * * * (2) the *credibility of the claimant and the credibility of persons supporting the claim.*" [emphasis added]

partment does not have to accept at face value an applicant's statements, a finding of a lack of credibility itself must have some basis in fact in order to withstand judicial scrutiny. The Department of the Navy so distorted petitioner's remark by taking it out of context that I can find here absolutely no basis in fact to question petitioner's credibility.

The critical comment was made by petitioner in response to a question which was required to be answered on his concientious objector application and which required him to set forth his own background of religious training and belief. Petitioner answered, in relevant part:

"I became particularly aware that man is the epitome of God's work, so perfect that the thought of halting man's life by killing is totally irreligious and therefore, incomprehensible to me. The Commandment "Thou Shalt Not Kill" is clear. Both nature and man are instruments of Life.

* * * I believe in a Supreme Being. I believe the Supreme Being exists in nature and in life. Nature (life) is the result of an ordered, creative process, ultimately initiated by a Supreme Being. Man is the result of this process. Since the Supreme Being is manifest in nature, he is therefore, manifest in man.

My belief is that this manifestation of God in nature and therefore, in man transcends all else, and therefore, it is impossible to acquiesce or participate in the disruption or destruction of human life. Because of my religious beliefs, I am not capable of willfully disrupting or destroying life in any way, particularly that life which is manifested in man.

The nature of my religious convictions are [sic] based solely on the existence of God, and His relationship to nature, man and life. These convictions are religious, for they guide my every day life—a Christian life, one guided by the ways of Christ toward goodness and life. As a result, *I have been a sincere pacifist all my life.* Fighting and killing were, and are not ways of life that Christ condoned. [emphasis added]

I feel that the Supreme Being is the purpose of life. My commitment to pacifism is based on my religious training and belief. This training and belief is based on many years of catholic [sic] education and scientific inquiry. My ultimate beliefs, formulated in the light of the possibility that I may presently be trained to kill, and indeed, asked to kill, require me at this time to step forward and say 'No.'! I am opposed to participation in war in any form. My convictions are not merely Catholic, but Christian. It was not until I was faced with the prospect of actual military service that I became capable of articulating my views."

In this same application, petitioner was asked to describe his actions and behavior which most conspicuously demonstrated the basis for his claim. He answered as follows:

"I have never struck another man. I have never lifted my hand to another man. This behavior is a result of religious convictions. The fact that I have been an active Catholic for 23 years also supports my claim. I attended Catholic schools all my life. I have actively participated in all the sacraments of the church for 23 years, and have molded my life and lived it in a true Christian form. *I have always been a sincere pacifist,* never believing in the use of force as a means to an end, and certainly never ever to the elimination of human life! * *" [emphasis added]

These statements leave no doubt in my mind that petitioner's claim to being a life-long pacifist is in no way incompatible with the activities relied upon by the Navy to defeat his claim, for it is clear that by "pacifism" petitioner meant *personal* non-violence. The Navy Department apparently rejected petitioner's

request on the basis of its own more expansive definition of pacifism. Yet there is absolutely nothing which prevents an applicant from being his own lexicographer, as long as he clearly sets forth the meaning which he decides to assign to a word. Here, petitioner's intention was clear: he was speaking of his life-long commitment to personal non-violence. Neither his work on the M-60 nor his Navy-related activities create the slightest doubt as to the truthfulness of his asserted credo of life.

Since petitioner's credibility was the only basis upon which the Navy Department denied his request to be discharged, and since all other evidence in the record appears favorable to petitioner's claim, I find that there was no basis in fact for the Navy Department's action. In fact I feel constrained to remark that their tortuous basis for rejection of petitioner's claim fails to appreciate the sensitivity of the decision which they have authority to make. In the light of compelling evidence uniformly supporting the legitimacy of petitioner's request, the Navy arbitrarily chose not to believe him. There can be no doubt that an individual commitment to pacifism so overrides the military need for additional fungible manpower that the former must be respected, even if at the expense of the latter. In fact DoD 1300.6 V C itself recognized this, in the following provision, which was in effect at the time of petitioner's claim:

> "Evaluation of the sincerity of a claim of conscientious objection requires objective consideration of professed belief not generally shared by persons in the military Service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own."

If the Navy had heeded this directive, petitioner might never have had to bring this habeas corpus action.

It is hereby ordered that Guy R. Bouthillette's petition for a writ of habeas corpus be granted, and that, being illegally restrained of his liberty, he be discharged from the custody and control of the United States Navy and custody and control of respondents.