**Daniel Cleveland PATTERSON**

v.

**Ronald L. STANCLIFF, Cpt., United States Army Reserve, et al.**

Civ. A. No. 6285.

United States District Court,
D. Vermont.

Aug. 13, 1971.

John A. Burgess, Montpelier, Vt., for petitioner.

Norman Cohen, Asst. U. S. Atty., Rutland, Vt., and Lea B. Pendleton, Office of the Staff Judge Advocate, Fort Devens, Mass., for defendants.

## OPINION AND ORDER

LEDDY, Chief Judge.

Petitioner, Daniel Cleveland Patterson, applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking discharge from the United States Army Reserve. A resident of Stowe, Vermont, petitioner is an enlisted member of the United States Army Reserve and is attached to the 344th Transportation Battalion (Truck), located at Montpelier in the State and District of Vermont.

At the request of his Commanding Officer, Captain Ronald L. Stancliff, petitioner was examined on March 8, 1971, by the Chief Psychiatrist of the Community Mental Health Center at Fort Devens, Massachusetts. This psychiatrist concluded from his examination and

from consideration of a report from petitioner's psychiatrist, dated December 13, 1970, that:

> Diagnosis is that of a character disorder. As such, he does meet retention standards of Ch. 3, Sect XV, AR 40–501. If his performance in the US Army Reserve constitutes more of a liability than an asset to his unit, discharge UP AR 135–178 would be appropriate.

On March 20, 1971, Captain Stancliff, having received this psychiatric report, wrote the Commanding General of the First United States Army recommending discharge for "unsuitability", because "[petitioner's] performance of duty since becoming assigned to this unit * * * has shown that he is more of a liability than an asset to this unit and to the Army Reserve". The letter from the Fort Devens psychiatrist, the report of petitioner's personal psychiatrist, and petitioner's personnel file were forwarded to First Army Headquarters along with this recommendation. On April 27, 1971, First Army Headquarters replied as follows: "Military 201 [personnel] File with SF 88 & 89 forwarded for maintenance by your Command. Reservist was found medically qualified by 1A Surgeon on 15 April 1971." The two psychiatric reports and a copy of a medical report [1] and medical history (SF 88 & 89) of an examination on October 13, 1968, were stamped "REVIEWED, Office of The Surgeon, 15 APR 1971, HQ First US Army". The medical report had also been stamped "HQ, FIRST US ARMY, OFFICE, SURGEON MEDICALLY DISQUALIFIED QUALIFIED FOR: * * * USAR RET * * * APR 15 1971".

Captain Stancliff interpreted the response of First Army Headquarters as a disapproval of his recommendation, an interpretation which the evidence shows to be most probably correct, and on April 30, 1971, ordered petitioner to attend all unit drills, advising him he had accumulated sufficient unauthorized absences so that if he failed to attend the two forthcoming drills he would be ordered to active duty for two years, less any time already served on active duty.

Petitioner filed an application for a writ of habeas corpus with this Court on May 14, 1971. On the same date a temporary restraining order was issued, unopposed by the respondents, restraining respondents from directing petitioner to attend drills or from treating failure to so attend as unexcused absences. Defendants filed a return to the writ on May 21, 1971, and moved to dismiss on the grounds of failure to state a claim upon which relief may be granted, F.R. C.P. 12(b)(6), and lack of subject matter jurisdiction, F.R.C.P. 12(b)(1). This Court denied the motion to dismiss on July 21, 1971. A hearing was held on that date at which both petitioner and respondent presented witnesses and documentary evidence. At the close thereof, respondents renewed their motion to dismiss.

■ Threshold questions are whether this Court has jurisdiction and whether petitioner has exhausted his administrative remedies. As for the former, the Second Circuit has made clear that an Army reservist seeking discharge is sufficiently "in custody", within the meaning of 28 U.S.C. § 2241(c)(1), for habeas corpus to lie. United States ex rel. Schonbrun v. Commanding Officer, 403, F.2d 371, 373 (2d Cir. 1968), cert. denied 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); United States ex rel. Altieri v. Flint, 54 F.Supp. 889 (D.Conn.1943), aff'd on opinion below, 142 F.2d 62 (2d Cir. 1944).

■ Federal courts have jurisdiction to review actions of the armed services to determine whether they have followed their own regulations and acted within the scope of their legitimate authority or discretion. *E. g.*, Nixon v. Secretary of

---

1. Added to the 1968 medical report was the handwritten notation: "See attached psychiatric consult dtd 8 Mar 1971 Ft Devens, Mass."

Navy, 422 F.2d 934, 937 (2d Cir. 1970); Smith v. Resor, 406 F.2d 141, 145–147 (2d Cir. 1969); United States ex rel. Schonbrun, *supra,* 403 F.2d at 373; Hammond v. Lenfest, *supra,* 398 F.2d at 715–716. If petitioner had failed to prove that the Army acted outside its legitimate authority or discretion or contrary to its own regulations, dismissal on the merits rather than for want of subject matter jurisdiction would be appropriate. This was the disposition of United States ex rel. Altieri v. Flint, *supra.*

Respondents contend that petitioner has not exhausted his administrative remedies because he has not applied to the Army Board for Correction of Military Records, one of the military boards established pursuant to 10 U.S.C. § 1552. The Board, which consists of civilian officers or employees of the Department of the Army, has as its mandate the correction of "any military [Army] record" when it considers this "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The Board was designed to free Congress from the burden of private bills authorizing or directing the correction of military records, such private bills now being prohibited. *See* 2 U.S.C. § 190g.

In the context of an in-service conscientious objector, the Fourth and Fifth Circuits have taken the position that application to the appropriate Board for Correction of Military Records is not an administrative remedy which must be exhausted before review may be had by way of habeas corpus. United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir.), application for stay of deployment denied as moot, 399 U.S. 902, 90 S.Ct. 2190, 26 L.Ed.2d 557 (1970); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F. 2d 700, rehearing denied, 412 F.2d 1137 (4th Cir. 1969). In the context of a soldier contesting discharge or retirement, this position was adopted by the District of Columbia and the Third Circuits, except that these Circuits held that resort to the Board would be required in the discretion of the District Court, exercised so as to retain jurisdiction but defer decision unless the party invoking the court's jurisdiction could demonstrate "special circumstances". Nelson v. Miller, 373 F.2d 474 (3d Cir.), cert. denied, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966); Ogden v. Zuckert, 111 U.S.App. D.C. 398, 298 F.2d 312 (1961).

The Second Circuit has not ruled directly on the issue. Because the exhaustion requirement is based on comity and is not a limitation on federal power, exhaustion is not jurisdictional. Hammond v. Lenfest, 398 F.2d 705, 713 n. 13 (2d Cir. 1968), in which the Government waived the exhaustion argument with which we are now presented,[2] is there-

2. U. S. Department of Justice Memorandum No. 652, dated October 23, 1969, states:

  RE:  Habeas Corpus Relief of Servicemen Denied Discharge as Conscientious Objectors

  After consultation with the Department of Defense the following policy respecting review of denials of release sought under Department of Defense Directive 1300.6 has been adopted effective immediately:

    \*    \*    \*    \*    \*

    2. *Exhaustion of Military Administrative Remedies*

  The decision of the Military will be deemed ripe for judicial review upon the final action of the Adjutant General of the Army, the Chief of the Bureau of Naval Personnel, the Adjutant General of the Air Force or the Commandant of the Coast Guard. Application to the Army and Air Force Boards for the Correction of Military Records will remain an available procedure but will not be insisted upon by the Government as a precondition to judicial review. The Board for the Correction of Naval Records adheres to its policy of rejecting applications for want of jurisdiction.

    \*    \*    \*    \*    \*

We see no differences which relate to the exhaustion requirement between discharg-

fore not controlling. *But see* Pitcher v. Laird, *supra,* 421 F.2d at 1276, 1276–1277 n. 8.

The lone dissenting Circuit has been the Ninth.[3] Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969). But *Craycroft* was vacated and remanded by the Supreme Court, which stated:

> *The Solicitor General concedes that the administrative remedies that the Court of Appeals held should first be exhausted by the petitioner, have either been exhausted or are nonexistent.* The sole remaining question therefore seems to be whether petitioner's failure to seek relief in the Court of Military Appeals precludes consideration of petitioner's claims by the federal courts. While the Solicitor General concedes that resort to that judicial remedy does not preclude consideration of petitioner's claim by the federal courts, there is a conflict among the circuits. It is for consideration of that question, or alternatively the merits, that the case is remanded.

397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970) (emphasis added).

■ Whatever the precedent value of the Supreme Court's disposition of *Craycroft,*[4] we agree with the view of the issue expressed in the denial of rehearing in United States ex rel. Brooks v. Clifford, *supra,* and in Nason v. Secretary of Army, 304 F.Supp. 422 (D.Mass. 1969). We therefore hold that resort to the Army Board for Correction of Military Records is not a prerequisite to review by this Court.

The merits of petitioner's claim involve two rather complex and confusing sets of Army regulations. Army Regulation No. 40–501 (hereinafter AR 40–501),[5] chapter 3, Retention Medical Fit-

---

es sought for conscientious objection and the discharge sought in the instant case. If anything, the petitioner in the case at bar has an even stronger argument for dispensing with resort to the Board than does an alleged conscientious objector. Respondents claim that the Army has made no decision against petitioner's interests. Although we doubt the correctness of this contention, should it prevail before the Army Board the Board might refuse to take jurisdiction. *See* Friedman v. United States, 158 F.Supp. 364, 373, 141 Ct.Cl. 239 (1958): "The Correction Boards were established for the purpose only of reviewing, on application of a member of the military personnel, a military record to correct errors or injustices *against* such personnel and not to review and reverse decisions of other established boards *favorable* to such personnel."

Nevertheless, since the Assistant U. S. Attorney has interpreted the memorandum as applicable only to discharges for conscientious objection, we face the issue squarely in the instant case.

3. District Courts have reached conflicting results, although the majority have disagreed with the Ninth Circuit. Bouthillette v. Commanding Officer, 318 F. Supp. 1143 (D.R.I.1970) (conscientious objector: resort to Board not required); Benson v. Holloway, 312 F.Supp. 49 (D.

Neb.1970) (homosexual discharge: discretion exercised to require resort to Board); Packard v. Rollins, 307 F. Supp. 1388 (W.D.Mo.1969) (conscientious objector: discretion exercised so as not to require resort to the Board), aff'd on other grounds, 422 F.2d 525 (8th Cir. 1970); Nason v. Secretary of Army, 304 F.Supp. 422 (D.Mass.1969) (conscientious objector: resort to Board not required); Jenkins v. Commandant, First Naval District, 303 F.Supp. 1150 (D. Mass.1969) (enlistee seeking hardship discharge: resort to Board not required); Laxer v. Cushman, 300 F.Supp. 920 (D. Mass.1969) (conscientious objector: resort to Board required); Gann v. Wilson, 289 F.Supp. 191 (N.D.Cal.1968) (conscientious objector: resort to Board not required); *see also* Mathis v. United States, 391 F.2d 938, 939 n. 1, 183 Ct.Cl. 145, vacated on other grounds, 394 F.2d 519, 183 Ct.Cl. 145 (1968); Girault v. United States, 135 F.Supp. 521, 133 Ct.Cl. 135 (1955).

4. *Compare* Parisi v. Davidson, 435 F.2d 299, 304 (9th Cir. 1970) *and* Mols v. Resor, 318 F.Supp. 238 (D. Hawaii 1970) *with* Bouthillette v. Commanding Officer, 318 F.Supp. 1143, 1148 (D.R.I.1970).

5. These are the regulations applicable to reserve units. The regular Army counterpart is found at 32 C.F.R. § 41.1 et seq. (1971).

ness Standards, "sets forth the various medical conditions and physical defects which normally render a member unfit for further military service." ¶ 3–1. Reserve members with conditions listed therein will normally be considered "unfit by reason of physical disability." ¶ 3–3. A member with such a disability may be eligible for disability benefits. The Fort Devens psychiatrist found that petitioner meets these retention standards, but that petitioner suffered from a "character disorder" within the meaning of AR 40–501 ¶ 3–31*a*, which states:

> *Character and behavior disorders.* Character and behavior disorders are considered to render an individual administratively unfit rather than unfit because of physical disability. Interference with performance of effective duty will be dealt with through appropriate administrative channels.

Petitioner does not challenge the conclusion of the Fort Devens psychiatrist that he should not be discharged by reason of physical disability, but contends that he should be discharged for "unsuitability," pursuant to Army Regulation No. 135–178 (AR 135–178), Reserve Components: Separation of Enlisted Personnel (effective 1 March 1970). This is the regulation to which ¶ 3–31 of AR 40–501 implicitly makes reference. AR 135–178 ¶¶ 7–2 & 7–5 state: ▮ *b.* Action will be taken to separate an enlisted member for unsuitability when it is clearly established that—

> (1) It is unlikely that he will develop sufficiently to participate in further military training and/or become a satisfactory soldier, and

> (2) He meets retention medical standards. (AR 40–501).
>
> \* \* \* \* \* \*

7–5. Applicability. An enlisted member is subject to discharge under the provisions of this chapter when one or more of the following conditions exist:

\* \* \* \* \* \*

*b.* *Unsuitability.*

\* \* \* \* \* \*

(2) *Character and behavior disorders.* Character and behavior disorders, disorders of intelligence, and transient personality disorders due to acute or special stress.

(3) *Apathy.* Apathy, defective attitudes and inability to expend effort constructively.

Only three persons have had direct contact with the petitioner in this administrative proceeding. The report which petitioner's personal psychiatrist forwarded to the Army stated facts and conclusions supporting the view that petitioner suffered from a character disorder. The Army's own psychiatrist diagnosed petitioner as suffering from a character disorder. And petitioner's commanding officer recommended petitioner's discharge. First Army Headquarters had available to it no input supporting petitioner's retention; it therefore acted without basis in fact, and thus illegally, in disapproving the recommendation of petitioner's Commanding Officer that petitioner be discharged. *See, e. g.,* United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Jenkins v. Commandant, First Naval District, 303 F.Supp. 1150 (D.Mass.1969); Gann v. Wilson, 289 F. Supp. 191 (N.D.Cal.1968).

Moreover, the record clearly establishes that First Army Headquarters based its decision on an irrelevant consideration. Headquarter's sole stated reason for disapproval was that "Reservist was found *medically* qualified by 1A [First Army] Surgeon \* \* \*." (emphasis added). The prominent enclosure accompanying First Army's decision was a 2½ year old report of a physical examination, and it was this report that had stamped on it the First Army Surgeon's conclusion. Thus, it is clear that First Army Headquarters relied on medical factors irrelevant to an unsuitability dis-

charge under AR 135–178 ¶¶ 7–2*b* & 7–5*b*.

Respondents stress the discretionary nature of the discharge involved [6] and the lack of finality accorded the unit commander's recommendations by the regulations. The regulations provide for the initiation of an unsuitability discharge by the reservist's commanding officer, who is to "refer the member to a medical facility and request a medical evaluation" and then "[f]orward the case with a recommendation that elimination proceedings * * * be initiated * * *." AR 135–178 ¶¶ 7–7 & 7–8*d*. Petitioner and respondents agree that the next step would properly be review by the "intermediate commander." ¶ 7–11. Although the Army did not follow this procedure in the case at bar, petitioner does not claim to have been harmed thereby, and we therefore do not consider this factor. Finally, the "convening authority", in this case First Army Headquarters, is to review the unit commander's recommendation. According to ¶ 7–12, the convening authority then has several options.[7]

First Army Headquarters in the instant case acted pursuant to ¶ 7–12*b*: "[The Convening Authority] may * * * [d]isapprove the recommendation and return the case to the originator for disposition by other means * * *." That it had discretion to overturn Captain Stancliff's decision is patent. But it was required to exercise this discretion in accordance with AR 135–178 ¶¶ 7–2*b* & 7–5*b* and on the basis of facts available to it; this was not done in petitioner's case. Moreover, ¶ 7–12*b* requires that "disposition by other means" be effected where the convening authority disapproves the unit commander's recommendation. This phrase would not seem to include simple retention, which was the disposition of the petitioner's case. It thus appears that the regulations contemplate that *some* remedial action will result from the unit commander's recommendation; if counselling or some other such disposition is considered useless then perhaps discharge is the only available remedy.

■ Because First Army Headquarters acted without basis in fact, we will

---

6. Because the Regulations provide less detailed standards for determining unsuitability than for determining conscientious objection or hardship, the Army retains more discretion in evaluating the propriety of an unsuitability discharge. But the fact that AR 40–501 ¶ 3–31 states that a character disorder renders an individual "*administratively* unfit" (emphasis added) cannot be used to buttress this conclusion. Conscientious objectors and other such personnel are also given "administrative" discharges. *Cf.* 32 C.F.R. § 41.3(e) (1971); AR 135–178 ¶¶ 1–9 & 1–14.

7. 7–12. Action by the convening authority. On receiving a recommendation for discharge for unfitness/unsuitability, the commander may—
   *a.* Disapprove the recommendation and direct reassignment of the member to another organization, if applicable, in which case the commanding officer's report will be forwarded to the new organization commander for information; or
   *b.* Disapprove the recommendation and return the case to the originator for disposition by other means; or

*c.* Disapprove the recommendation relating to unfitness, and convene a board of officers to determine whether the member should be separated for unsuitability; or
   *d.* Convene a board of officers to determine whether the member should be separated for unfitness; or
   *e.* When the board hearing has been properly and effectively waived, direct separation of the member for unfitness or unsuitability (para 7–3); except as provided in paragraph 7–4*a*; or
   *f.* When the board hearing has been properly and effectively waived, approve discharge, except as provided in paragraph 7–4*a*, of the member for unfitness or unsuitability and suspend execution of the discharge (para 9–9); or
   *g.* Direct that the case be processed through medical channels, if appropriate. Such disposition is required if the individual has an incapacitating physical or mental illness which was the direct or substantial contributing cause of the conduct for which action under this chapter is being considered.

retain jurisdiction and order that petitioner be discharged unless, in the alternative, the Army authorities discharge him or decide in accordance with applicable regulations and on a proper factual basis to retain him. If the Army follows the latter course, this Court may then be required to determine whether the procedure followed by the Army comports with its regulations and whether it has acted constitutionally. A decision at this time as to whether petitioner is entitled to the procedural safeguards set out in AR 135–178 ¶¶ 7–6, 7–8a, 7–10, 7–13, 7–14, & 9–2a which he claims were not afforded him would be premature.

For the reasons stated above, the motion to dismiss is hereby denied and it is hereby ordered:

That unless within forty-five days the respondents discharge petitioner Patterson, or, in accordance with applicable regulations and on a proper factual basis determine that he should be retained, the petitioner will be discharged by this Court from the custody of respondents.