356 F.Supp. 591 (1973)
Slater WILLIAMS, Plaintiff,
v.
Robert F. FROEHLKE, Secretary of the Army, Defendant.
No. 72 Civ. 1550.
United States District Court, S. D. New York.
March 28, 1973.
Covington, Grant, Howard, Hagood & Holland, New York City, for plaintiff; George Donald Covington, New York City, of counsel.
Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Taggart D. Adams, of counsel.

MEMORANDUM
LASKER, District Judge.
On September 25, 1960, Slater Williams was convicted by a general court-martial in Frankfurt, Germany, of robbery, disrespect and communication of a *592 threat and sentenced to five years at hard labor and a dishonorable discharge. He sues, pursuant to 28 U.S.C. § 1361, to set aside his conviction and to order the Army Board for Correction of Military Records to grant him an honorable discharge on the grounds that (1) under the rule enunciated in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L. Ed.2d 291 (1969), the court-martial lacked jurisdiction to try him for the robbery offense and (2) as to all offenses of which he was convicted, that he was deprived of due process because of inadequate representation by trial counsel.
Defendant, Froehlke, moves to dismiss, or, in the alternative, for summary judgment, on several grounds. First, he contends that this court lacks jurisdiction because (1) an action to set aside a conviction must be brought by petition for a writ of habeas corpus, which is not appropriate here since Williams is not in custody and Froehlke is not within the territorial jurisdiction of the court; and (2) Williams has not exhausted his administrative remedies. Second, he claims that the complaint does not state a cause of action as to which relief may be granted because: (1) O'Callahan did not deprive the court-martial of jurisdiction since it does not apply to courts-martial held outside the territorial limits of the United States; (2) O'Callahan does not apply retroactively; and (3) Williams was adequately represented by counsel.

I. Jurisdiction.
Although the question is not entirely free from doubt, we find that the court has jurisdiction of the action as a suit for mandamus.
Froehlke's argument that review of court-martial proceedings can only be had by petition for writ of habeas corpus had been rejected by several circuits. See, e. g., Homcy v. Resor, 147 U.S.App.D.C. 277, 455 F.2d 1345 (1971); Angle v. Laird, 429 F.2d 892 (10th Cir. 1970), cert. denied, 401 U.S. 918, 91 S.Ct. 90, 27 L.Ed.2d 819 (1971); Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965). In this circuit, it was initially held that a district court was without jurisdiction to review and order correction of military records, because the military board's determination was final under 10 U.S.C. § 876. United States v. Carney, 406 F.2d 1328 (2d Cir. 1969). However, a recent decision by the Court of Appeals has upheld a lower court decision ordering by mandamus vacation of a court-martial conviction and correction of military records pursuant to 28 U.S.C. § 1361. United States ex rel. Flemings v. Chafee, 458 F.2d 544 (2d Cir. 1972), aff'g 330 F. Supp. 193 (E.D.N.Y.1971), cert. granted sub nom. Warner v. Flemings, 407 U.S. 919, 92 S.Ct. 2461, 32 L.Ed.2d 805 (1972). Aside from the question of exhaustion of remedies, discussed below, there is no distinction between Flemings and this case.
Froehlke contends that, in any event, we lack jurisdiction, because Williams did not exhaust his administrative remedies, since, although he sought review of his conviction in the United States Court of Military Appeals both by appeal and by coram nobis and applied twice for correction of his military records to the Army Board for Correction of Military Records, he never raised the issues presented here, namely, lack of jurisdiction and inadequate assistance of trial counsel. We find this argument unpersuasive.
Although the Court of Appeals for this circuit has not considered the question, many courts have held, in a variety of contexts, that application to the Army Board for Correction of Military Records pursuant to 10 U.S.C. § 1552 is not a necessary prerequisite to requesting relief in federal court.[1] As Judge *593 Oakes, sitting by designation, stated in United States ex rel. Joy v. Resor, 342 F.Supp. 70, 72 (D.Vt.1972), "resort to the Army Board for Correction of Military Records is not an administrative remedy which must be exhausted" and "[i]n light of the present state of the law, and the legislative history of 10 U. S.C. § 1552, it is unlikely that the Second Circuit would today require application to the Army Board for Correction of Military Records before judicial action could be taken." Accordingly, we assume the existence of jurisdiction and proceed to the merits.

II. Extraterritorial application of O'Callahan.
Williams was convicted of robbing a German cabdriver while off-duty and in civilian clothes. Froehlke does not dispute that the offense was not service-connected or that, if committed within the territorial limits of the United States after the O'Callahan decision, it would not have been triable by court-martial under the O'Callahan rationale. He contends, however, that O'Callahan may not be applied retroactively or extraterritorially.
The question of retroactivity has been decided favorably to Williams by the Court of Appeals for this circuit in United States ex rel. Flemings v. Chafee, 458 F.2d 544 (2d Cir.), cert. granted sub nom. Warner v. Flemings, 407 U.S. 919, 92 S.Ct. 2461, 32 L.Ed.2d 805 (1972). Accordingly, we need not consider it further.
We turn to the problem of O'Callahan's extraterritorial application. At the outset, it should be noted that O'Callahan does not by itself require the result urged by plaintiff. As stated in Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), which further refined O'Callahan, the earlier case involved an offense committed "within our territorial limits [and] not in an occupied zone of a foreign country." Relford, supra, 401 U.S. at 365, 91 S.Ct. at 655. Williams argues, however, that O'Callahan, together with Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) and its progeny,[2] which hold that civilian dependents and employees associated with the armed forces abroad are not subject to court-martial jurisdiction, compel the conclusion that if neither the status of the defendant nor the situs of the offense independently confers jurisdiction, both factors together cannot do so.
While this rationale is not inconsistent with the delineation of court-martial jurisdiction drawn by the Supreme Court, neither is it compelled by it. To the contrary, the lower courts which have considered the question have universally reached the opposite result, citing the many problems which would result from extraterritorial application of O'Callahan. See Hemphill v. Moseley, 443 F.2d 322 (10th Cir. 1971); Swift v. Commandant, 440 F.2d 1074 (10th Cir. 1971); Bell v. Clark, 308 F.Supp. 384 (E.D.Va.1970), aff'd, 437 F.2d 200 (4th Cir. 1971); Gallagher v. United States, 423 F.2d 1371, 191 Ct.Cl. 546 (1970); Williamson v. Alldridge, 320 F.Supp. 840 (W.D.Okla.1970); United States v. Keaton, 19 U.S.C.M.A. 64, 41 C.M.R. 64 (1969). Extraterritorial application would force the government to the unfortunate choice of bringing a soldier who commits an offense abroad to the United States for trial or remanding him for that purpose to the courts of the *594 country in which he is located. Since the former option would often entail prohibitive difficulty and expense, the latter course would normally be followed. In view of O'Callahan's concern with the constitutional rights of servicemen-defendants, rights which would in many instances be better protected by United States courts-martial than in the civilian courts of foreign nations,[3] such a result would be anomalous.
Admittedly, with regard to military dependents and employees, the same difficult dilemma resulted from the Court's decision in Reid, and the Court, nonetheless, refused to uphold court-martial jurisdiction over them. However, Reid involved what Justice Black characterized as an "extension" (354 U.S. at 21, 77 S. Ct. 1222) or "expansion of military jurisdiction" (id. at 39, 77 S.Ct. 1222), whereas here we are asked to work a further major retraction of military jurisdiction,[4] following that effectuated by O'Callahan.
Thus, although plaintiff presents a position with appealing logical consistency, he has not persuaded us that the Supreme Court intended the result he suggests when it decided O'Callahan six years after Reid. Given the drastic consequences which would follow, we are unwilling to take such a step without a clearer indication of the Court's views. Accordingly, we decline to hold that the court-martial which tried Williams did not have jurisdiction over the robbery offense.

III. Due process and adequacy of counsel.
Williams argues that, although he was represented by both military and civilian counsel at his court-martial, their representation was so inadequate as to deprive him of due process in violation of the Fifth Amendment and of effective assistance of counsel in violation of the Sixth Amendment.
The standard to be applied is the stringent one enunciated in habeas corpus cases, requiring Williams to show "that `the purported representation by counsel was such as to make the trial a farce and a mockery of justice,' representation that is so deficient as `to shock the conscience of the Court.' United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950)." United States ex rel. Crispin v. Mancusi, 448 F.2d 233, 237 (2d Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 288 (1971). We have reviewed the trial transcript with care and find that the performance of Williams' counsel far surpassed this standard.
Defendant's motion for summary judgment is granted.
It is so ordered.
NOTES
[1] See, e. g., Parisi v. Davidson, 405 U.S. 34, 38, n. 3, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); Bratcher v. McNamara, 448 F.2d 222 (9th Cir. 1971); United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir.), application for stay of deployment denied as moot, 399 U.S. 902, 90 S.Ct. 2190, 26 L.Ed.2d 557 (1970); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700, rehear'g denied, 412 F.2d 1137 (4th Cir. 1969); United States ex rel. Joy v. Resor, 342 F.Supp. 70 (D.Vt. 1972); Patterson v. Stancliff, 330 F. Supp. 110 (D.Vt.1971).
[2] Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed. 2d 268 (1960); Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279 (1960); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960).
[3] Among the rights which might be diluted or denied by foreign courts are: 1) right to counsel; 2) freedom from self-incrimination; 3) protection from double jeopardy; 4) freedom from cruel and unusual punishment; 5) protection from unreasonable searches and seizures; and 6) right to a speedy trial. Furthermore, in most countries, the accused soldier would not be afforded grand jury indictment and trial by jury, which are the chief rights of which a court-martial deprives him.
[4] In the United States, military jurisdiction over civil crimes dates back to 1863, when Congress authorized it for certain crimes in times of war. Act of Mar. 3, 1863, c. 75, § 30, 12 Stat. 736; Rev.Stat. § 1342, Art. 58 (1874). In 1916, the Articles of War were revised to allow peacetime court-martialing of specified non-capital civilian crimes. 39 Stat. 650. In 1950, the Uniform Code of Military Justice extended court-martial jurisdiction to capital crimes. O'Callahan, 395 U.S. at 271-272, 89 S.Ct. 1683, 23 L.Ed. 2d 291.