Ralph Edward BALDWIN,
Petitioner-Appellant,

v.

Major General Reginald M. CRAM, Adjutant General, National Guard of the United States, et al., Appellees.

No. 1039, Docket 74–2602.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1975.

Decided Sept. 10, 1975.

Mary Just Skinner, Vermont Legal Aid, Inc., Montpelier, Vt., for petitioner-appellant.

Jerome F. O'Neill, Asst. U. S. Atty. (George W. F. Cook, U. S. Atty. for the District of Vermont, William B. Gray, Asst. U. S. Atty., on the brief), for appellees.

Before SMITH, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from the dismissal of a writ seeking relief against an order compelling a National Guardsman to report to active army duty. It involves the question whether the courts may review the refusal of the Army to discharge a person on the basis of his claim to be "unfit" to be a soldier when he is absent without leave. More precisely, the question sought to be raised is whether Army Regulation 635–212 (AR 635–212) governing discharge of persons "unfit" or "unsuitable" for military service [1] requires that, once a unit command-

1. "Unfitness" is defined by Army Regulation 635–212 to include the following: frequent incidents "of a discreditable nature" with civil or military authorities and an "established pat-

er determines that an individual should be processed for separation under the regulation and requests a "medical and mental status evaluation," the Army must discharge the individual even though he is absent without leave and hence unavailable for the required evaluation. While the answer is plainly negative, as the United States District Court for the District of Vermont, Albert W. Coffrin, *Judge,* found,[2] we find that appellant has no standing at the present time to present the issues of jurisdiction and reviewability for his discharge claim under AR 635–212.

In December, 1971, appellant voluntarily enlisted in the Vermont National Guard for a term of six years. The enlistment entailed six months of active duty and in May, 1972, Baldwin was went to Fort Leonard Wood, Missouri, to fulfill that obligation. On June 8, 1972, he went AWOL from Fort Leonard Wood. While absent he obtained medical advice which recommended that he be separated from military service. He voluntarily returned to Fort Leonard Wood in July and sought a discharge with the aid of letters from his civilian doctors. Apparently his unit commander requested a psychiatric evaluation under AR 635–212, but in August, before the evaluation process was completed, Bald-

win again went AWOL and returned to Vermont. While he was AWOL, he was reassigned to the Vermont Army National Guard and processed, pursuant to AR 135–91, ¶ 11.1b,[3] as an unsatisfactory participant in the Reserve Enlistment Program and was given orders to report to Fort Dix, New Jersey, on December 11, 1972, for 22 months and 10 days of active duty. He filed a petition for writs of habeas corpus and mandamus on December 8, 1972, and was on that day granted a temporary order by Judge Coffrin restraining appellees from asserting control over him until his case was decided.

▪ The case might be thought paradoxical in that appellant's conduct alone is an indication that he is unfit to be in the service, so that a casual observer would suppose that the Army would want him out, or at least, not want him in.[4] To this end the court took the somewhat unusual though not unique position at argument of suggesting that the case might be disposed of by an agreement under which the appellant would report for active duty and the Army would discharge him as unfit. But this proved impossible because the Army has not yet decided—and perhaps cannot decide until it has appellant back in its custody and control—exactly what

---

tern for shirking." Under the Regulation, "unsuitability" includes "inaptitude," "character and behavior disorders," "apathy (lack of appropriate interest), defective attitudes, and inability to expend effort constructively."

2. *Baldwin v. Cram,* Civ. No. 6805 (D.Vt., Sept. 12, 1974).

3. AR 135–91, ¶ 11.1b, provides as follows:

When an enlisted member of the ARNGUS or the USAR who having been ordered to initial ADT [Active Duty Training] fails to report as ordered or, having reported for duty absents himself without proper authority, is returned to military control after the termination date of the member's period of ADT the State adjutant general, or area commander, as appropriate, will declare the member to be an unsatisfactory participant in the Ready Reserve program. Immediate action will be taken by the appropriate commander to order the member to active duty for a period of 24 months, less the number

of days and months he has previously served on active duty or active duty for training . . . ..

4. Pursuant to 10 U.S.C. §§ 269, 673a, Army Regulation 135–91, ¶ 11.1b, allows persons who have failed to report or gone AWOL to be declared "unsatisfactory participants" and assigned to as much as two years of active duty. While on its face this may seem unwise from the Army's viewpoint, the regulation's rationale obviously is to avoid having guardsmen act badly so as to avoid their service responsibilities. The statute is a way for the Army in effect specifically to enforce its personal service or enlistment contract, the kind of contract which as regards forms of service other than the military is not specifically enforcible by an affirmative decree, Restatement of Contracts § 379 (1932); 11 S. Williston, Contracts § 1450 (3d ed. 1968); *Lumley v. Wagner,* 1 DeG., M. & G. 604 (Ch.Ct.1852).

it wants to do with him.[5] The Army's position in this regard is understandable; a person who is AWOL as appellant is [6] cannot, according to the terms of AR 635–212, be "processed" for release. The separation processing under this regulation requires a physical examination and mental status evaluation of the appellant by Army personnel.[7] By his absence, the appellant has precluded the Army from exercising its authority over him, most particularly, from carrying out the evaluation as required in the exercise of its authority to discharge him under AR 635–212.

▮ So saying, we have answered the specific question at issue. Appellant cannot be heard to assert a claim for relief since a person who has put himself beyond the reach of the administrative authorities cannot be permitted to contest the failure of those authorities to follow their regulations involving an evaluation of his conduct. This is especially true here where compliance with the regulations at issue requires the *presence* of the individual who has absented himself. The appellant must be estopped from asserting the Army's failure to discharge him in compliance with AR 635–212, at least until he has appeared, as the Army requests, for examinations pursuant to its determination of his fitness to serve. This result is no different from the requirement of an exhaustion of the administrative process [8] or from cases holding that a defendant who has not subjected himself to the jurisdiction of the court is not entitled to assert a plea in bar. *See United States v. Weinstein,* 511 F.2d 622, 628 (2d Cir. 1975) (dicta).

5. According to Army correspondence submitted to the court by the United States Attorney, the Army's alternatives include court-martial, discharge in lieu of court-martial or forgiveness of the prior transgressions.

6. Judge Coffrin originally granted a temporary restraining order at appellant's request. While the TRO was dissolved on dismissal of the complaint, the appeal has operated by agreement or acquiescence to keep it in effect. Thus appellant is AWOL by court order. The docket entries curiously show, however, that on December 11, 1972, "[i]t was determined that plaintiff was not AWOL." But correspondence by counsel indicates that he is not presently within the jurisdiction of the Army.

7. AR 635–212 provides in part:

8. Medical evaluation. a. When a unit commander determines that an individual is to be processed for separation under this regulation, he will initially refer the individual to the medical treatment facility providing dispensary care and request a medical and mental status evaluation. Sufficiently detailed information about the reasons for considering the individual unfit or unsuitable should be furnished the medical treatment facility *to allow medical examiners a thorough understanding of the contemplated action.*

The medical and mental status evaluation evidently is required in separation processing because of its role in determining whether a person is qualified for separation under the regulation. AR 635–212 provides:

3. Policy. a. Action will be taken to separate an individual for unfitness when it is clearly established that—

(1) Despite attempts to rehabilitate or develop him as a satisfactory soldier further effort is unlikely to succeed; or

(2) Rehabilitation is impracticable (as in cases of confirmed drug addiction) or he is not amenable to rehabilitation measures (as indicated by the medical and/or personal history record); or

(3) An unfitting medical condition (AR 40–501) is not the direct or substantial contributing cause of his unfitness (para. 9b).

b. Action will be taken to separate an individual for unsuitability when it is clearly established that—

(1) It is unlikely that he will develop sufficiently to participate in further military training and/or become a satisfactory soldier, *and*

(2) He meets retention medical standards (AR 40–501) (para. 9a).

8. This is not a case such as *United States ex rel. Joy v. Resor,* 342 F.Supp. 70, 72 (D.Vt. 1972), where the exhaustion requirement was deemed satisfied because the petitioner had completed all administrative procedures except for an appeal to the Army Board for Correction of Military Records. *See also Patterson v. Stancliffe,* 330 F.Supp. 110, 112–13 (D.Vt. 1971). Rather, this appellant has wholly avoided the administrative process and asks us to determine his fitness to serve without benefit of any of the examination material which would be prepared under AR 635–212. Our reference to exhaustion here should not be construed to imply any conclusion on our part regarding jurisdiction over petitioner's claim if the administrative procedure had been fully pursued. We need not, and therefore do not, answer that question on this appeal.

In this posture of the case we need not answer the complex of questions presented to us in the briefs—whether a soldier has standing to claim a violation of AR 635–212 or whether that regulation is solely for the benefit of the Army, *see Allgood v. Keenan,* 470 F.2d 1071, 1073–74 (9th Cir. 1972); *Silverthorne v. Laird,* 460 F.2d 1175, 1186 (5th Cir. 1972); whether the district court has any jurisdiction to enforce the regulation if it is solely for the benefit of the Army (Judge Coffrin held with *Allgood* and *Silverthorne* that he did not, *but see Patterson v. Stancliffe,* 330 F.Supp. 110 (D.Vt.1971)); whether there is jurisdiction to order the armed services to obey the regulation if it were developed for the protection of servicemen, *see Naskiewicz v. Lawver,* 456 F.2d 1166 (2d Cir. 1972); *United States ex rel. Donham v. Resor,* 436 F.2d 751 (2d Cir. 1971); *United States ex rel. Joy v. Resor,* 342 F.Supp. 70 (D.Vt.1972); or whether a claim for relief under AR 635–212 may ever be stated. These questions may be simply different ways of stating the central substantive issue here which, given appellant's conduct, we find we cannot reach at this time.

Judgment affirmed.